FRANK E. PEABODY *vs.* EDWARD STETSON, and another.

Penobscot.    Opinion January 10, 1896.

*Insolvency.   Non-resident Debtor.   Attachment.   Constitutional Law.   R. S.,*
*c. 70, § 33;   Stat. 1891, c. 109.*

Chapter 191 of the laws of 1891, which subjects a resident of another state, who has property in this state, to the provisions of the insolvent law, provides a mode for the equitable distribution of the debtor's property in this state, through the machinery of the insolvent law; and limited to that purpose is constitutional.   The act is prospective in its operation, and can have no retroactive effect.   It became operative on May 3, 1891.

*Held;* that an attachment of a debtor's property made prior to that date, is not dissolved by proceedings in insolvency, under that act, instituted within four months after the attachment.

In this case the defendant's attachment of the insolvent's real estate was made on March 12, 1891.   The inchoate lien thus obtained became perfected by judgment in the suit, and sale of the land on execution.   *Held;* that defendant's title to the land demanded in this writ is good, the plaintiff's mortgage not having been recorded until April 13, 1891.

See *Manufacturers' National Bank* v. *Hall,* 86 Maine, 107; *George Stetson* v. *Dudley Hall,* and another, 86 Maine, 110.

ON REPORT.

This was a real action to recover certain lands in the Northern registry district of Aroostook county, which the demandant claimed under a mortgage given by Dudley C. Hall, of Medford, Massachusetts, dated December 17, 1890, and recorded April 13, 1891, as appears in the case George Stetson v. Dudley and Dudley C. Hall, 86 Maine, 110.   This mortgage was duly foreclosed.   George Stetson, a resident of Bangor, in this state, on the tenth day of March, 1891, brought an action on a promissory note given by the Halls for $10,000, dated September 6, 1890, and on March 12, 1891, made an attachment of the real estate of Dudley C. Hall, in Aroostook county, and a copy of the officer's return of the attachment was filed in the Northern registry of that county on March 16, 1891.   The action proceeded to judgment and said Hall's real estate was duly seized and sold on execution to these defendants.

VOL. LXXXVIII.       18

Under the statute of 1891, c. 109, approved March 27, 1891, which went into effect May 3, 1891, proceedings in insolvency were begun on May 11, 1891, against Dudley C. Hall, in Penobscot county, on the petition of his creditors, not including George Stetson, or these defendants who are executors of his will. The debtor was adjudged an insolvent and assignees were appointed, who received an assignment July 22, 1891.

The principal question in this case was whether the attachment made by George Stetson, March 12, 1891, upon his writ against Dudley C. Hall and the subsequent seizure and sale on execution were avoided by the proceedings in insolvency.

The statute under which the proceedings in insolvency were instituted is as follows :

An Act to amend section seventeen of chapter seventy of the Revised Statutes, relating to the Insolvent Law.

### CHAPTER 109.

Be it enacted by the Senate and House of Representatives in Legislature assembled, as follows :

Section seventeen of chapter seventy of the revised statutes of eighteen hundred and eighty-three, is hereby amended by inserting after the word "resides" in the third line of said section the words "or if a non-resident of the state, to the judge of the county in which said non-resident debtor may have personal property or real estate," so that said section as amended, shall read as follows :

Section 17. When one or more creditors of a debtor makes application under oath, by petition by them signed, to the judge of the county in which the debtor resides, or if a non-resident of the state, to the judge of the county in which said non-resident debtor may have personal property or real estate, or from which he has absconded or removed beyond the state, within six months before the filing of said petition, leaving property or estate in said county, setting forth that they believe that their aggregate debts provable under this chapter, amount to more than one-fourth part of the debts provable against such debtor, and that they further believe, and have reason to believe, that said debtor is insolvent, and that it is for the best interests of all the creditors that

the assets of such debtor should be divided as provided by this chapter, and it shall be satisfactorily made to appear to the judge that the allegations contained in such application are true, and that such debtor is insolvent, the judge shall issue his warrant, under his hand, to the sheriff of the county or either of his deputies, directing him forthwith to attach the real and personal estate of the debtor not exempt by law from attachment and seizure on execution, wherever the same may be situated within the state, and forbidding the payment to or by such debtor of any debt, demand or claim, and the sale, transfer, mortgage, pledge, conveyance, or removal by such debtor, his agents or attorneys, of any of his estate, property, rights or credits, and the making of any contracts for the sale or purchase thereof, or relating thereto, until such warrant is revoked by said judge. Upon the issuing of such warrant, the register shall cause an attested copy of such application and warrant to be served upon the debtor, or such other notice as the judge may order, to be given, and the debtor thereupon may appear, and a hearing shall be had upon such application by the judge, who may thereupon revoke such warrant, unless such allegations are proved. After service of the copy of the application and warrant upon such debtor, or the giving of such other notice provided by this section, as the judge may order, and until the revocation of such warrant, any payment of a debt, demand or claim, to or by said debtor, and any sale, transfer, mortgage, pledge, conveyance, or contract, for the sale or purchase of any estate, property, rights or credits, of such debtor, by him, or his agent or attorney, shall be null and void. If upon hearing or default, the judge finds the allegations of such application to be true and proved, and that said debtor is insolvent, he shall issue his additional warrant to said sheriff or either of his deputies, and cause such other proceedings to be had as are provided in the preceding section.

Approved March 27, 1891.

*J. B. Peaks*, for plaintiff.

The attachment was dissolved by statute 1891, c. 109. Plain-

tiff's mortgage not affected by the insolvency proceedings. *Coffin* v. *Rich*, 45 Maine, 507 ; *Kingley* v. *Cousins*, 47 Maine, 91 ; *Bryant* v. *Merrill*, 55 Maine, 515.

The courts have always recognized the right of the legislature to change, modify or take away a remedy by a subsequent statute, and not violate the constitutional provision. In *Frost* v. *Ilsley*, 54 Maine, 351, the legislature had changed the law of lien claims, while the plaintiff's lien existed by a statute then in force. The plaintiff claimed it was not retroactive, and if so the legislature had no authority to destroy an existing lien ; but the court decided otherwise, and that the legislature had always the control of any remedy. Even to take it away, and not violate any provisions of the constitution. In *Coffin* v. *Rich*, 45 Maine, 507, the court say : "There can be no doubt that the legislature have the power to pass retroactive statutes, if they affect remedies only." Such is the well-settled law of the state. See *Owen* v. *Roberts*, 81 Maine, 444.

Applying the law to this case, defendant's attachment on March 12, 1891, was only a remedy provided by the statute. It was a statute remedy for the collection of a debt. It had no force outside of the provisions of our statute. It was a remedy pure and simple. If an existing lien-claim for wages, by force of our statute, was only a remedy, as held by our court in *Frost* v. *Ilsley*, supra, how can the real estate attachment of defendants, by force of our statute, be anything more than a remedy ; and if one can be modified or changed by the legislature, why not the other?

In *Lord* v. *Chadbourne*, 42 Maine, 429, which involved the construction and the provisions of the statute that no action of any kind should be maintained in any court for this state for intoxicating liquors, the court say : "The legislature may pass laws altering or modifying or even taking away remedies for the recovery of debts, without incurring violation of the provisions of the constitution."

In *Fales* v. *Wadsworth*, 23 Maine, 553, the court say : "No person can have a vested right in a mere mode of redress provided by statute." The legislature may at any time repeal or

modify such laws. They may prescribe the number of witnesses which shall be necessary to establish a fact in court, and may again at pleasure modify or repeal such laws, and so they may prescribe what shall and what shall not be evidence of a fact, whether it be in writing or oral.

The law of 1891 was simply a modification of the law as it then stood. It put the affairs of non-resident and resident insolvents into the same court, where they are to be governed by the same process ; where all insolvent estates are to be distributed by the provisions of chapter 70, R. S. And to have the effect of modifying the remedy by attachment, is precisely the same case as the modification of the remedy in *Frost* v. *Ilsley*, supra, where the legislature changed the law of lien.

*Charles P. Stetson*, for defendants.

The Act of 1891, c. 109, is wholly unconstitutional. It is not competent for the legislature of Maine, to pass a law providing for proceedings of involuntary insolvency against a citizen of Massachusetts.

Insolvent laws of a state can only be local and have no extra territorial force, so as to act upon the rights of citizens of other states. *Felch* v. *Bugbee*, 48 Maine, 9, p. 18.

Every bankrupt or insolvent system must partake of the character of a judicial investigation. Parties whose rights are to be affected are entitled to a hearing. Hence every system in common with the particular system now before us, professes to summon the creditors before some tribunal, to show cause against granting a discharge to the bankrupt.

But on what principle can a citizen of another state be forced into the courts of this state for investigation ?

But when in the exercise of that power (power to pass insolvent laws), the states pass beyond their own limits and act upon the rights of other states, there arises a conflict of sovereignty and a collision with the judicial powers granted to the United States which renders the exercise of such a power incompatible with the rights of other states and with the constitution of the United States. *Ogden* v. *Saunders*, 12 Wheaton, 213.

The statute of 1891, c. 109, is not and was not intended to be retroactive or retrospective.

A statute is construed to operate prospectively only; unless on its face the contrary intention is manifest beyond reasonable question. *Shreveport* v. *Cole*, 129 U. S. 39.

SITTING: PETERS, C. J., FOSTER, HASKELL, WHITEHOUSE, WISWELL, STROUT, JJ.

STROUT, J. This is a writ of entry to recover certain lands in the northern Registry District of Aroostook county. Demandant claims under a mortgage of these lands, and other lands in the southern district of Aroostook, given to him by Dudley C. Hall, dated December 17, 1890, recorded in the southern district on December 29, 1890, and in the northern district, April 13, 1891. Defendant claims the lands in controversy, under an attachment in suit, *George Stetson* v. *Dudley C. Hall et al.*, made on March 12, 1891, duly recorded, and a sale upon execution which issued upon the judgment rendered in that suit; at which sale defendants became purchasers, and received a deed from the officer. It is not controverted that all proceedings after the attachment were in regular form and within the statutory periods of time, to maintain the lien of the attachment in force; and that the attachment, antedating as it did, the record of demandant's mortgage in the northern registry district, took precedence of the mortgage, unless the attachment was vacated by insolvency proceedings against Dudley C. Hall, the debtor. Hall, at the date of the mortgage, was a citizen of Massachusetts, owning these lands in Maine, and it is not claimed that he has at any time been a citizen of this state, or resident here. Demandant was then and now a citizen of Massachusetts.

On the twenty-seventh day of March, 1891, the Legislature of this state, by an amendment to the insolvent law, provided that a non-resident of the state who had real or personal property within it, should be subject to its provisions. Chapter 109, law of 1891. This act became an operative law on the

third day of May, 1891. On the eleventh day of May, 1891, a petition in insolvency was filed by creditors of Dudley C. Hall (but not including these attaching creditors), in Penobscot county; and on the ninth day of July, 1891, Hall was duly declared an insolvent under the law of 1891, and assignees were appointed, and an assignment made to them in accordance with the provisions of the insolvent law.

The main question is, whether these insolvency proceedings vacated the attachment on the Stetson writ. Demandant claims that it was vacated under R. S., chap. 70, § 33, as the attachment had not existed four months prior to commencement of insolvency proceedings.

Defendants say, the act of 1891 is unconstitutional; and if not, that it cannot retroact to discharge a lien legally existing before the enactment of the law.

The constitutionality of state insolvent laws, in the absence of a general bankrupt law of the United States, when confined to the limits of the enacting state, and operating upon its own citizens, is beyond question, since the case of *Ogden* v. *Saunders*, 12 Wheat. 369. It is equally well settled that such laws cannot operate to bar suits by citizens of the same state upon contracts existing prior to the passage of the law; *Schwartz* v. *Drinkwater*, 70 Maine, 409; and that they have no effect upon contracts held by citizens of other states, unless such holders became parties by proving their claims. *Owen* v. *Roberts*, 81 Maine, 445.

The act of 1891 attempts to subject to its provisions citizens of other states, owning property in this state, over whom neither this state nor its courts have any personal jurisdiction. But the property of such non-residents situated in this state, is subject to control under the local law. Many provisions of the insolvent law cannot be applied or enforced against a non-resident, who does not voluntarily come in and make himself a party to the proceeding.

The object of the statute undoubtedly was, to enforce an equitable distribution of the debtor's property in this state, among his creditors; and this is attempted to be accomplished

through the machinery of the insolvent law.   Euough of the provisions of that law can be enforced against a non-resident to accomplish this object; and it may well be, when that result is reached, that further proceedings cease, because inapplicable. Regarded in this light, and confined to this purpose, it is not in conflict with any constitutional provision.

Assuming the decree of insolvency against Hall, to be effective for this purpose, we are to determine its effect upon the attachment in the Stetson suit.   When the attachment was made on the twelfth day of March, 1891, it became, under the law then existing an inchoate lien upon the land in controversy, which entitled the creditor, if he observed all the requirements of the statute to perfect his lien, to subject the lands, by sale on execution, to the payment of any judgment in his suit.   It appears that all these requirements were fulfilled, and the defendants became the purchasers of the lands.   *Kilborn* v. *Lyman*, 6 Met. 304.   Until the enactment of the statute on March 27, 1891, which went into effect on May 3, 1891, there was no provision of the insolvent law which could affect Hall, or his property in this state ; and the creditor's lien could not be lost, except by his own laches.

On the third day of May, 1891, a new statute subjected Hall's property in this State to its control.   The general rule is that statutes shall have a prospective operation unless the intention of the Legislature is clearly expressed, or clearly to be implied from their provisions, that they shall apply to past transactions. *Deake, appellant,* 80 Maine, 55.   So far as the rights of these parties, and the disposition of Hall's property in this State, are concerned, the entire insolvent law, including the amendment of 1891, must be regarded as first becoming law on the third day of May, 1891.   The act of 1891, is not in terms made retroactive, and nothing in its language raises a fair implication that the Legislature intended it to have that effect.   It is necessarily prospective in its application to Hall, and cannot be retroactive in its operation upon his property.   The first proceeding is against Hall to obtain a decree of insolvency.   There was no authority for such proceeding till May 3, 1891.   Hall's

property is affected, as the result of the decree of insolvency, and cannot be affected by any provisions of the insolvent law, existing before the law subjected Hall to its provisions. As to him, all its provisions speak from May 3, 1891, and do not retroact upon rights, liens or conditions lawfully existing prior to that date. *MacNichol* v. *Spence*, 83 Maine, 90 ; *Hussey* v. *Danforth,* 77 Maine, 20 ; *Palmer* v. *Hixon*, 74 Maine, 448. The provisions in the original insolvent law, that attachments existing less than four months prior to proceedings in insolvency are dissolved, must, as to Hall and his property, be construed as speaking from the third day of May, 1891, and be operative upon subsequent attachments of the property of a non-resident insolvent, and cannot be permitted to destroy a lien, created, existing and valid before the enactment of the law.

To give it such retroactive effect, would seem to impair the obligation of the contract, which the states are prohibited from doing by the constitution of the United States, as that provision has been defined and construed by the Supreme Court of the United States. *Bronson* v. *Kinzie*, 1 How. 312 ; *Edwards* v. *Kearzey*, 96 U. S. 607 ; *Planters' Bank* v. *Sharp*, 6 How. 301. These decisions upon this question are authoritative and binding upon all state courts.

It has sometimes been said, that a remedy may be materially impaired, if not wholly taken away, without conflicting with this constitutional provision,— that in such case the contract subsists, though the means of enforcing it are so much weakened by subsequent legislation, as to render it of little value to the holder. But the Supreme Court of the United States, in *Edwards* v. *Kearzey*, supra, say : " The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those imperfect obligations, as they are termed, which depend for their fulfilment upon the will and conscience of those upon whom they rest. The ideas of right and remedy are inseparable. Want of right and want of remedy

are the same thing. . . . The laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge and enforcement." This court has held that attachments made upon contracts entered into while the insolvent law was in existence, were affected by its provisions, although the debt was held by a citizen of another state. *Owen* v. *Roberts*, 81 Maine, 445. But in that case, the court carefully reserved the question whether an attachment made before insolvency, upon a debt existing before the enactment of the insolvent law, should not be regarded as a vested right. And in *Bigelow* v. *Pritchard*, 21 Pick. 175, though not deciding the point, the court say : "A creditor has no vested right in the mere remedy, unless he may have exercised that right by the commencement of legal process under it, before the law making an alteration concerning it, shall have gone into operation."

Limiting the act to a prospective operation, so far as the rights of these parties are concerned, it follows that the lien of defendants' attachment was not lost by the insolvency of Hall, and that the defendants have title to the lands in controversy, and there must be,

*Judgment for defendants.*