TREIGLE *v.* ACME HOMESTEAD ASSOCIATION.*

No. 287.   Argued January 9, 1936.—Decided February 3, 1936.

---

* Together with No. 288, *Treigle* v. *Thrift Homestead Assn.;* No. 289, *Treigle Sash Factory, Inc.* v. *Conservative Homestead Assn.;* No. 290, *Treigle Sash Factory, Inc.* v. *Union Homestead Assn.;* and No. 316, *Mitchell* v. *Conservative Homestead Assn.* Appeals from the Supreme Court of Louisiana.

190

*Mr. Alex W. Swords,* with whom *Mr. A. Giffen Levy* was on the brief, for appellants.

*Mr. Delvaille H. Theard,* with whom *Messrs. Louis H. Yarrut, Harry Emmet McEnerny, Azzo J. Plough, Percival H. Stern, Elias Goldstein, Joseph W. Carroll,* and *William John Waguespack, Jr.,* were on the brief, for appellees.

By leave of Court, *Mr. C. Clinton James* filed a brief on behalf of the United States Building & Loan League, as *amicus curiae,* supporting the position of appellees.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This is one of five appeals [1] from a decision of the Supreme Court of Louisiana,[2] presenting the question whether certain provisions of Act No. 140, adopted by the legislature of that State on July 12, 1932,[3] are consistent with Article I, § 10, and § 1 of the Fourteenth Amendment, of the Constitution of the United States.

Prior to the adoption of Act No. 140 the laws of Louisiana provided that every stockholder of a domestic building and loan association should have the right to withdraw as a member upon filing a written notice of intention so to do; and thereupon to receive the amount of his investment and a share of the profits. Every association was required to keep a register, in which notices of withdrawal were to be entered in the order of presentation; and to pay withdrawals in that order. If the proportion of the association's income ordinarily made applicable to the demands of withdrawing members was insufficient to pay all such demands within sixty days from date of notice, one-half of the association's receipts was to be set apart to liquidate such members' claims, until all deferred claims were paid.[4]

---

[1] The companion cases are: No. 288, *Treigle* v. *Thrift Homestead Association;* No. 289, *Treigle Sash Factory, Inc.* v. *Conservative Homestead Association;* No. 290, *Treigle Sash Factory, Inc.* v. *Union Homestead Association;* No. 316, *Joseph Mitchell* v. *Conservative Homestead Association.*

[2] 181 La. 941; 160 So. 637. The other cases are reported in 181 La. pp. 971 to 973, inclusive; 160 So. 646, 647, 648.

[3] Louisiana Laws, 1932, p. 454.

[4] Act 120 of 1902, Louisiana Laws, 1902, p. 195, as amended by Act 280 of 1916, Louisiana Laws, 1916, p. 568.

On May 19, 1932, appellant, as owner of fifty shares of full paid stock of appellee, a building and loan association incorporated and domiciled in Louisiana, gave a written withdrawal notice. Thereafter the Legislature adopted Act No. 140 of 1932. By § 53 the directors of any association are authorized, before making any appropriation of receipts which may be applied to the liquidation of claims of withdrawing members, to use its receipts and funds for operating expenses, maintenance and improvement of repossessed property, payment of obligations and creation of cash reserves for future dividends. Section 54 provides that whenever, subsequent to the passage of the act, the proportion of receipts ordinarily made applicable to the demands of withdrawing members is insufficient to pay all such demands within sixty days from date of application for withdrawal, the applicant first on the list shall receive twenty-five per cent of the amount due him, not less, however, than $500. As to any balance his claim is to be transferred to the end of the list and, except as hereafter noted, he is to receive no further payments until his name shall have reached the head of the list. Each pending application is to be similarly treated. New applications are to be placed at the foot of the list. The association may, however, in its discretion, pay in full any demand which amounts to less than $100 and may also pay not more than $100 per month to any applicant if the directors find his necessities call for such payment.

Section 55 gives the directors discretionary power to authorize an allowance on the amount of unpaid withdrawals under such terms and conditions as to the amount of individual withdrawals in view of the time the application has been on the list, or otherwise, as the board may decide; but the amount of such allowance is not to exceed sixty per cent of the rate of dividend currently paid in cash on continuing members' shares. The allowance may be withdrawn at any time without affecting the

association's right to continue to pay dividends on the shares of continuing members.

Section 56 empowers the directors to allocate, from receipts or other assets, sums to be paid withdrawing members; and supersedes the earlier provision for setting aside fifty per cent of all receipts for this purpose. The section further provides that twenty-five per cent of the gross receipts may be used for making loans notwithstanding the existence of a withdrawal list and that all, or any part, of the funds and current receipts may be expended for payment of debts, operating expenses, or dividends to continuing members.

The appellant brought suit in the civil district court for the Parish of Orleans to restrain the appellee from complying with the foregoing provisions of Act 140. In his petition he recited his ownership of full-paid shares; his rights under the association's charter and by-laws and the statutes in force prior to the adoption of that act; his application on May 19, 1932, for withdrawal of his shares. He alleged that, subsequent to the date of his notice, other similar applications had been paid in full but that his had not been reached for payment; that, in violation of the contract clause and the Fourteenth Amendment of the Federal Constitution, Act 140 purports to destroy and materially change his vested rights as a withdrawing shareholder. A rule *nisi* issued, the appellee answered, and also excepted to the petition and demand for failure to state a right of action or a cause of action. Judgment awarding an injunction was reversed by the Supreme Court of Louisiana and the suit was dismissed.

The statute, in § 76, provides:

"Any person holding shares in an association . . . who attacks the constitutionality . . . of any . . . provision of this statute, must file suit to that effect against the association within ninety days from the time when the

present Statute goes into effect; and said period of ninety days is now fixed as the term of prescription within which any remedy in that behalf must be instituted in the courts by any member or other person; and the failure to file such suit within that delay shall be deemed and held by all-courts at all times thereafter as an acquiescence in . . . any . . . provision of the present statute, and after such ninety-day period no further attack on the constitutionality of . . . any . . . provision of the present statute can be presented; . . ."

The appellant instituted his suit within the ninety-day period. In his petition he alleged that he had no adequate remedy at law, and that he would suffer irreparable injury if the appellee's officers acted as permitted or required by the statute. The Supreme Court said:

"There is no doubt, however, that the Act of 1932 did prevent some of the many withdrawing shareholders in building and loan associations throughout the state from collecting the amount of their shares in full at the time when payment would have been made if this statute had not been adopted. We shall rest this decision, therefore, upon the proposition that the Act of 1932 did deprive the plaintiff of an advantage, and of a valuable right, which he enjoyed by virtue of having his name on the withdrawal list more than sixty days before the statute was adopted. The question, therefore, is whether the Legislature could deprive the plaintiff of the advantage and right which he enjoyed, without violating the constitutional limitation forbidding the passing of a law impairing the obligation of contracts, or divesting vested rights." [954, 955.]

The statute impairs the obligation of the appellant's contract and destroys his vested rights in contravention of Article I, § 10, and Amendment XIV, § 1, of the Constitution.

The court below held the challenged sections of the act proper exertions of the state's police power, upon

the view that state legislation to promote health, safety, morals or welfare cannot be defeated by private contracts between citizens, or nullified because it interferes with vested rights; and, since building and loan associations are creatures of the state, the power to alter and amend their charters inheres in the sovereign. The appellant, conceding the correctness of these propositions, insists that the statute is not in fact a valid exercise of the police power and cannot be sustained as an amendment of the association's charter.

The appellee asserts the act was adopted to meet the existing economic emergency; members of, and borrowers from, building and loan associations found themselves unable to keep up their dues and interest payments; those whose savings were invested in the shares of such associations were compelled by their necessities to seek withdrawal of the investment; these conditions imperiled the usefulness, if not the existence, of many building and loan associations; the state had a vital interest in their preservation and the equitable administration of their assets in the interest of all concerned. The appellant replies that the sections under attack are neither intended nor adapted to conserve the assets of building associations, but, on the contrary, affect merely the rights of members *inter sese,* and are unreasonable and arbitrary interferences with vested contract rights.

The act is a revision and codification of the statutory law governing building and loan associations, including their incorporation, management, supervision by state administrative authority, winding up and dissolution. It does not purport to deal with any existing emergency and the provisions respecting the rights of withdrawing members are neither temporary nor conditional. Compare *W. B. Worthen Co.* v. *Thomas,* 292 U. S. 426, 433–434. The sections in question do not contemplate the liquidation of associations, the conservation of their assets or

the distribution thereof amongst creditors and members. Other sections deal with these matters.[5] Section 54 merely changes the order of payment of those entitled to withdraw their investments. The section effects no reduction in the amount of the debt, no postponement of payment of the total, but a redistribution of the proportions to be paid to individuals. The provision is comparᵇle to a statute declaring that whereas preferred stockholders heretofore have enjoyed a priority in the distribution of assets, in that respect they shall hereafter stand *pari passu* with common stockholders. Such an interference with the right of contract cannot be justified by saying that in the public interest the operations of building associations may be controlled and regulated, or that in the same interest their charters may be amended. The statute merely attempts, for no discernible public purpose, the abrogation of contracts between members and the association lawful when made. This cannot be done under the guise of amending the charter powers of the corporation. Compare *Bedford* v. *Eastern Building & Loan Assn.*, 181 U. S. 227.

Under existing law, and the appellant's contract, fifty per cent of the receipts of the association had to be set apart to pay withdrawing members. By the new legislation this requirement is abolished and the amount to be set aside is left to the sole discretion of the directors. They are authorized to apply the association's receipts to the making of loans, to payment of old or new debts, to dividends to continuing members, or to the creation of a cash reserve for future dividends. The sections permitting such use of the amounts collected do not tend to conserve the assets of the association, to render it more solvent, or to insure that its affairs will be administered so as to protect the investments of the continuing and

---

See §§ 66 and 67. See also Act No. 44, Second Extraordinary Session of 1934, Louisiana Laws, 1934, p. 156.

withdrawing members. They do alter the rights of the withdrawing members as between themselves and as against continuing members.

The appellee bases its entire argument in support of the challenged enactment upon the proposition that, as building and loan associations are incorporated for a quasi-public purpose, the state has a peculiar interest and a concomitant power of supervision and regulation to prevent injury and loss to their members; and it is said that this court affirmed the principle in *Hopkins Federal Savings & Loan Assn.* v. *Cleary*, 296 U. S. 315. We have no disposition to qualify what was there said. We recognize that these associations, like banks and public service companies, are subject to a degree of regulation which would be unnecessary and unreasonable in the case of a purely private corporation. But laws touching building and loan associations, like those affecting banks or utility companies, must be confined to purposes reasonably connected with the public interest as distinguished from purely private rights. The legislature has no greater power to interfere with the private contracts of such corporations, or the vested rights of their stockholders as such, under the pretext of public necessity, than it would have to attempt the same ends in the case of a private corporation. Though the obligations of contracts must yield to a proper exercise of the police power,[6] and vested rights cannot inhibit the proper exertion of the power,[7] it must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive.

As we have pointed out, the questioned sections deal only with private rights, and are not adapted to the legitimate end of conserving or equitably administering the

---

[6] *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398.

[7] *Nebbia* v. *New York*, 291 U. S. 502.

assets in the interest of all members. They deprive withdrawing members of a solvent association of existing contract rights, for the benefit of those who remain. We hold the challenged provisions impair the obligation of the appellant's contract and arbitrarily deprive him of vested property rights without due process of law.

The judgment of the Supreme Court of Louisiana must be reversed. As numbers 288, 289, 290 and 316 involve the same question as the instant case, a like judgment will be entered in each.

*Reversed.*