# Richmond

## CITIZENS MUTUAL BUILDING ASSOCIATION, INCORPORATED v. MRS. KARL C. EDWARDS.

January 14, 1937.

Present, All the Justices.

The opinion states the case.

*Mann & Tyler*, for the plaintiff in error.

*W. R. Ashburn*, for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

On March 10, 1931, the Citizens Mutual Building Association, Incorporated (hereinafter referred to as the building association), executed and delivered to Mrs. Karl C. Edwards (hereinafter called the plaintiff) its bond in the principal sum of $500, bearing interest at the rate of 6% per annum, and payable to her order on January 1, 1936.

Payment of the obligation at its maturity having been demanded and refused, the present suit was instituted in the court below by a notice of motion for judgment returnable on February 17, 1936. This notice was properly served, returned to the clerk's office, and the cause was duly docketed.

On the return day of the notice of motion counsel for the plaintiff moved for judgment. This was resisted by the defendant on the ground that one of its attorneys was a member of the General Assembly of Virginia, which was then in session, and the cause was continued until after the adjournment of that body.

On April 10, 1936, the defendant filed a special plea averring that, pursuant to Code Supp. 1932, section 4167 (17), as amended by Acts 1934, chapter 142, the State Corporation Commission, on March 31, 1936, on the *ex parte* application of the defendant, had entered an order wherein it had found that the said defendant building association was "confronted with an emergency due to probable withdrawals of funds and otherwise;" that consequently said order had authorized

and directed the said defendant to "suspend the payment of indebtedness by the association, however evidenced, for a period of six months from March 28, 1936, * * * unless otherwise directed or permitted by the State Corporation Commission;" that the defendant association had "accepted the said order and in pursuance thereof, by resolution of its board of directors, suspended the payment of its indebtedness, however evidenced, including the indebtedness now sued on, for the period named in the order;" and that pending said order the trial court was without jurisdiction to proceed with the cause.

To this plea the plaintiff filed a demurrer contending that Code Supp. 1932, section 4167 (17), clause "sixth," as amended by the Acts of 1934, page 217, chapter 142 (relied on by the defendant), and the order of the State Corporation Commission based thereon and purporting to suspend the payment of plaintiff's claim, were in derogation of the rights guaranteed to her by the Federal and State Constitutions.

The court sustained the demurrer to the special plea, and, there being no defense on the merits to the action, entered a judgment in favor of the plaintiff for the amount claimed.

The sole assignment of error is to the action of the court in sustaining the demurrer to the plea and entering judgment for the plaintiff. In support of this position the building association asserts:

(1) That the action of the Commission and the statute in question are not violative of either the Federal or the State Constitution.

(2) That the action of the trial court in retaining jurisdiction of the cause and in proceeding to final judgment therein had the effect of reviewing and annulling the order entered by the State Corporation Commission on March 31, 1936, and as such was contrary to subsection (d) of section 156 of the Virginia Constitution.

Code Supp. 1932, section 4167 (17), as amended by the Acts of 1934, page 217, chapter 142, provides for the supervision by the State Corporation Commission of all building and loan associations doing business in this State; the exam-

ination of such associations by the Commissioner of Insurance and Banking; and the assessment against said associations of the necessary fees for the purpose of defraying the expenses of such supervision and examination. Then follows the provisions of the act which are here under review:

"If, upon the examination of any such building and loan association, the State Corporation Commission shall ascertain that the laws of this State are not being fully observed or that any irregularities are being practiced, or that the capital stock of such association has been impaired or is in danger of being impaired, or that the interests of the public are not being properly protected, the said commission shall give immediate notice thereof to the officers and directors of such association and if deemed necessary in order to conserve the assets of such association or to protect the interest of members and creditors, or either, thereof, commission may exercise any or all of the following powers: * * * (sixth) without examination, close, for such period or periods as the commission may deem necessary, any association facing an emergency due to withdrawal of funds or otherwise, or without closing such association grant to it the right to suspend or limit the payment of indebtedness by the association, however evidenced, for such period as the commission may determine; and during such period no court shall entertain a suit or action therefor against such association. The powers enumerated in (one), (two) and (six) shall be exercised by the commission only upon request of the directors of such association."

Some idea of the far-reaching scope of this statute may be gathered from what happened here. Pursuant to the provisions of this act, on the *ex parte* application of the building association, the Commission granted to it a moratorium suspending the payment of its debts on the ground that it was "confronted with an emergency due to probable withdrawals of funds and otherwise. This was done "without examination" of the association, without closing it, without taking its assets into custody, without inaugurating any steps for its liquidation, without notice to the creditors affected, and without

making any provision for the payment or security of their claims, although a suit was then actually pending in a court of competent jurisdiction to enforce the payment of one of such claims.

During the pendency of this cause the defendant building association again appeared before the Commission on May 11, 1936, and on its *ex parte* application the said order of March 31, 1936, was modified to permit and allow the building association to pay some of its debts in full without paying or securing the payment of others.

Again, on September 28, 1936, and on the *ex parte* application of the building association, the Commission extended the moratorium period for an additional term of six months from that date.

In fairness to the State Corporation Commission it should be said that there is no contention that its action went beyond the provisions of the statute.

The first question which we are called upon to answer is, does this statue, and the action of the commission based thereon, violate the rights guaranteed to the plaintiff by the Federal and State Constitutions?

Article I, section 10, of the Constitution of the United States provides: "No State shall * * * pass any * * * law impairing the obligation of contracts, * * * ."

Section 58 of the Virginia Constitution says: "The General Assembly shall not pass * * * any laws impairing the obligation of contracts, * * * ."

The Fourteenth Amendment to the Constitution of the United States provides: " * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The plaintiff's contract with the defendant association was made in 1931, three years prior to the legislative enactment authorizing the granting of this moratorium. Her rights are to be determined by the law in force at the date of the making of the contract. *W. B. Worthen Co. ex rel. Board*

*of Com'rs* v. *Kavanaugh,* 295 U. S. 56, 60, 55 S. Ct. 555, 79 L. Ed. 1298, 97 A. L. R. 905.

According to the law in effect at the inception of the contract the plaintiff had the right, upon default in the payment of the bond, immediately to institute an action on the contract in the forum which she selected, and upon presentation of proper evidence, to secure judgment and collect the debt according to the then established processes of law.

If the act of the General Assembly under review is to be given its full force and effect, then the State Corporation Commission was empowered, on the *ex parte* application of the defendant association and without notice to the plaintiff to enter an order suspending the payment of the plaintiff's claim for an indefinite period, and thereby bring into operation the provision of the statute ousting, during the pendency of said order, the jurisdiction of the court which had theretofore attached.

■ To us it is clear beyond question that this act of the General Assembly, which undertook to give such power to the State Corporation Commission, was in violation of the rights guaranteed to the plaintiff by the Federal and State Constitutions.

The widespread economic disturbance of the last few years has prompted the passage of many laws of a moratory nature by the Legislatures of the several States, and the attack on the constitutionality of these has produced a multitude of decisions from the Federal and State courts. It would serve no useful purpose to undertake to here review and classify these. Many of such cases are collected in the annotations found in 86 A. L. R. 1539; 88 A. L. R. 1519; 90 A. L. R. 1330; 94 A. L. R. 1352; 96 A. L. R. 312, 826, 853; 97 A. L. R. 911, 1123; 104 A. L. R. 375.

An examination of a number of these cases convinces us that the constitutionality of no statute, so broad as that here under review, has been sustained.

The case which lends the greatest support to the view of the petitioner, and that most strongly relied on by it, is *Home Building & Loan Ass'n* v. *Blaisdell,* 290 U. S. 398, 54 S. Ct.

231, 78 L. Ed. 413, 88 A. L. R. 1481, commonly referred to as the Minnesota Mortgage Moratorium Case. There, in a five to four decision, the Supreme Court sustained the constitutionality of a Minnesota statute approved April 18, 1933 (Laws 1933, chapter 339).

That statute declared the existence of a public emergency due to the severe financial and economic depression prevalent throughout the nation, as a result of which it said many owners of real property were temporarily unable to meet payments of taxes, interest and principal of mortgages, and were, therefore, threatened with the loss of their property through foreclosure sales. The act then provided that as to foreclosure sales, where the period for redemption had not already expired, the mortgagor or owner in possession, by applying to a State court before its expiration, might obtain an extension for such time as the court might deem just and equitable, but in no case beyond May 1, 1935. The application was to be made on notice to the mortgagee. The court was directed to find the reasonable income or rental value of the property, and, as a condition to any extension allowed, was to order the applicant to pay all, or a reasonable part, of such rental value, in or towards the payment of taxes, insurance, interest and mortgage indebtedness, at such times and in such manner as the court might deem just and equitable. Upon the applicant's default in any such payment, his right to redeem was to terminate in thirty days. Provisions were made for extensions as conditions might demand. But the act further provided that it was to remain in effect only during the emergency and in no event beyond May 1, 1935.

The majority of the court, through an opinion written by Mr. Chief Justice Hughes, held that the finding by the Legislature of the existence of a public emergency furnished the proper occasion for the exercise of the reserved police power of the State to protect the vital interests of the community, and that such exercise of power, where appropriate to the emergency and granted upon reasonable conditions, did not contravene the contract clause of the Constitution (Article I, section 10).

In the later case of *W. B. Worthen Co.* v. *Thomas*, 292 U. S. 426, 54 S. Ct. 816, 78 L. Ed. 1344, 93 A. L. R. 173, the court, passing upon an Arkansas statute exempting moneys paid or payable to any resident of the State under any life, sick, accident or disability insurance policy from liability for the payment of debts, held that statute to be unconstitutional so far as it applied to debts owing before the exemption was created. Again, speaking through Mr. Chief Justice Hughes, the court pointed out the limitations on the doctrine announced in the *Blaisdell Case* in the following language (292 U. S. 426, at page 432, 433, 54 S. Ct. 816, 818, 78 L. Ed. 1344, 93 A. L. R. 173):

"We held in *Home Building & Loan Ass'n.* v. *Blaisdell, supra* (290 U. S. 398), page 434, *et seq.* (54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481), that the constitutional prohibition against the impairment of the obligation of contracts did not make it impossible for the State, in the exercise of its essential reserved power, to protect the vital interests of its people. * * * But we also held that this essential reserved power of the State must be construed in harmony with the fair intent of the constitutional limitation, and that this principle precluded a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. We held that when the exercise of the reserved power of the State, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. This is but the application of the familiar principle that the relief afforded must have reasonable relation to the legitimate end to which the State is entitled to direct its legislation. Accordingly, in the case of Blaisdell, we sustained the Minnesota mortgage moratorium law in the light of the temporary and conditional relief which the legislation granted. We found that relief to be reasonable, from the standpoint of both mortgagor and mortgagee, and to be limited to the exigency to which the legislation was addressed.

"In the instant case, the relief sought to be afforded is neither temporary nor conditional. In placing insurance moneys beyond the reach of existing creditors, the Act contains no limitations as to time, amount, circumstances, or need. We find the legislation, as here applied, to be a clear violation of the constitutional restriction."

See also, *W. B. Worthen Co., ex rel, Board of Com'rs. v. Kavanaugh*, 295 U. S. 56, 63, 55 S. Ct. 555, 79 L. Ed. 1298, 97 A. L. R. 905; *Louisville, etc., Bank* v. *Radford*, 295 U. S. 555, 581, 55 S. Ct. 854, 859, 79 L. Ed. 1593, 97 A. L. R. 1106.

An examination of the Virginia statute shows that it contains none of the limitations found in the Minnesota law and stated by the Supreme Court to be essential to its validity.

The Minnesota statute was predicated upon a public emergency which was declared by the legislature to be in existence as a result of the severe financial and economic depression then sweeping over the country. The Virginia law has no such foundation. It simply provides for a moratorium at the hands of the State Corporation Commission for "any association facing an emergency due to withdrawal of funds or otherwise." Such broad language includes not only an emergency affecting the public as a whole, but also an emergency confined solely to the affairs of the particular association, even though such may be brought about by the mismanagement or misconduct of its officers or employees. The power of suspension may be invoked in normal as well as in abnormal times; in periods of prosperity and in times of distress. In the present case there is no contention of the existence of any public emergency justifying this moratorium.

The operation of the Minnesota statute, by its express terms, was limited to the period of the emergency and in no event beyond May 1, 1935. The Virginia act is unlimited in duration and is not confined to the period of any public emergency. If valid, it became a part of the permanent law of this State and will remain so during the pleasure of the General Assembly.

Under the terms of the Minnesota law the application

for the suspension of payments by the debtor was to be made after reasonable notice to creditors. There is no such provision in the Virginia statute.

The Minnesota act provided for the protection by the court of interests of the creditor as well as those of the debtor. The latter was required to make payments during the moratorium period. There is no such provision in the Virginia law. Indeed, under the terms of the latter statute, the Corporation Commission may prevent indefinitely—"for such period as the Commission may determine" the payment of certain debts and permit the liquidation of others.

It is, therefore, apparent that there is little, if any, similarity between the Minnesota and the Virginia statutes.

We think that, as to the plaintiff's claim, the portion of the Virginia statute now under review is clearly unconstitutional under the holding in *Treigle* v. *Acme Homestead Ass'n*, 297 U. S. 189, 56 S. Ct. 408, 80 L. Ed. 575, 101 A. L. R. 1284.

Under the law as it existed in Louisiana prior to 1932, every stockholder of a domestic building and loan association had the right to withdraw as a member upon filing a written notice of intention so to do, and thereupon to receive the full amount of his investment and a share of the profits. Every association was required to keep a register in which notices of withdrawal were to be entered in the order of presentation; and to pay withdrawals in that order. If the proportion of the association's income ordinarily made applicable to the demands of withdrawing members was insufficient to pay all such demands within sixty days from the time of notice, one-half of the association's receipts was to be set apart to liquidate such members' claims until all deferred claims were paid.

On May 19, 1932, Treigle, as the owner of fifty shares of full-paid stock of the Acme Homestead Association, gave a written withdrawal notice. Thereafter the Louisiana legislature passed a general law applicable to all building associations, wherein it was provided that whenever, subsequent to the passage of the act, the proportion of the receipts ordinarily made applicable to the demands of withdrawing members

was insufficient to pay all such demands within sixty days from date of application for withdrawal, the applicant first on the list should receive 25 per cent of the amount due him, not less than $500, however. As to any balance, applicant's claim was to be transferred to the end of the list, and he should receive no further payments until his name should again reach the head of the list. Each pending application for withdrawal was to be similarly treated.

The effect of the 1932 act was to permit the withdrawing member to receive only 25 per cent of the amount due him, whereas, under the law as it existed at the time of his contract with the association, he was entitled upon application to withdraw the full amount of his investment.

In holding that the statute impaired the obligation of his contract and destroyed his vested rights in violation of Article I, section 10, of the Federal Constitution and the Fourteenth Amendment thereto, the court said (297 U. S. 189, 196, 197, 56 S. Ct. 408, 411, 80 L. Ed. 575, 101 A. L. R. 1284):

"Such an interference with the right of contract cannot be justified by saying that in the public interest the operations of building associations may be controlled and regulated, or that in the same interest their charters may be amended. The statute merely attempts, for no discernible public purpose, the abrogation of contracts between members and the association lawful when made. This cannot be done under the guise of amending the charter powers of the corporation. * * *

"We recognize that these associations, like banks and public service companies, are subject to a degree of regulation which would be unnecessary and unreasonable in the case of a purely private corporation. But laws touching building and loan associations, like those affecting banks or utility companies, must be confined to purposes reasonably connected with the public interest as distinguished from purely private rights. The Legislature has no greater power to interfere with the private contracts of such corporations, or the vested rights of their stockholders as such, under the pretext of public necessity, than it would have to attempt the same ends in a case of a private corporation. Though the obliga-

tions of contracts must yield to a proper exercise of the police power, and vested rights cannot inhibit the proper exertion of the power, it must be exercised for an end which is in fact public and the means adopted must be reasonably adapted to the accomplishment of that end and must not be arbitrary or oppressive."

■■ We are not unmindful of the principles which we should keep before us in determining the constitutionality of an act of the General Assembly. "The Constitution is to be liberally construed, so as to uphold the law, if practicable." *Bosang* v. *Iron Belt Building & Loan Ass'n*, 96 Va. 119, 123, 30 S. E. 440, 441. "Every act of the legislature is presumed to be constitutional, and the courts are powerless to declare an act invalid, except where it appears beyond doubt that it contravenes some provision of the State or Federal Constitution. If we doubt we must sustain its constitutionality." *Tobacco, etc., Ass'n* v. *Warehouse Co.*, 144 Va. 456, 469, 132 S. E. 482, 486. *Reynolds* v. *Milk Commission*, 163 Va. 957, 966, 179 S. E. 507.

■ But, as was said in *United States* v. *Butler*, 297 U. S. 1, 62, 56 S. Ct. 312, 318, 80 L. Ed. 477, 102 A. L. R. 914: "When an act of Congress is appropriately challenged in the courts as not conforming to the constitutional mandate, the judicial branch of the government has only one duty; to lay the article of the Constitution which is invoked beside the statute which is challenged and to decide whether the latter squares with the former. All the court does, or can do, is to annouce its considered judgment upon the question."

■ Our conclusion is that that portion of Code Supp. 1932, section 4167 (17), as amended by the Acts of Assembly of 1934, page 217, chapter 142, which gives to the State Corporation Commission the power to suspend or limit the payment of indebtedness by any building association for such period as the Commission may determine, and depriving the courts of jurisdiction to entertain a suit or action against such association during such period, is, insofar as it applies to a contract indebtedness created prior to the passage of said act, in contravention of Article I, section 10, of the Constitu-

tion of the United States, the Fourteenth Amendment thereto, and of section 58 of the Virginia Constitution.

It necessarily follows that the orders of the State Corporation Commission based on said act, are invalid so far as they affect the claim of the plaintiff against the defendant building association.

Counsel for the building association argues that even if it be conceded that the statute which gave to the Commission the power to order a suspension of the plaintiff's claim be unconstitutional and invalid, yet when the trial court retained jurisdiction of the plaintiff's suit against the association and proceeded to a final judgment therein, it, in effect, reviewed, reversed and annulled the action of the Commission contrary to subsection (d) of section 156 of the Constitution of Virginia. It is said that the plaintiff should first have moved the Commission to dissolve the order which stood in the way of the payment of her claim, and if unsuccessful on that motion she should then have appealed direct to this court from the ruling of the commission.

The pertinent part of the constitutional section, 156(d), is as follows:

"All appeals from the commission shall be to the Supreme Court of Appeals only; * * * *No court of this Commonwealth (except the Supreme Court of Appeals, by way of appeal as herein authorized) shall have jurisdiction to review, reverse, correct or annul any action of the commission, within the scope of its authority, or to suspend or delay the execution or operation thereof, or to enjoin, restrain or interfere with the commission in the performance of its official duties; * * *.*" (Italics ours.)

We think it is clear that the action of the trial court did not violate this constitutional provision; that it did not "review, reverse, correct or annul any action of the Commission, within the scope of its authority, or * * * interfere with the Commission in the performance of its official duties."

The "action of the Commission"—that is, the order entered by it—reads as follows:

"Upon request and motion of the Citizens Mutual Building Association, Incorporated, by Delamater Davis, its counsel,

"IT IS ORDERED that the order herein of March 28, 1936, be and hereby is vacated and annulled.

"And thereupon Citizens Mutual Building Association, Incorporated, by its counsel, requested and B. J. Woodward, Examiner of the Banking Division of the Bureau of Insurance and Banking recommended that an order be entered by the Commission in lieu of and in substitution for the order herein of March 28, 1936, hereby vacated, under the provisions of section 17 of section 4167, Code of Virginia, 1919 (Code Supp. 1932, section 4167(17), as amended), without examination and without closing Citizens Mutual Building Association, Incorporated, granting to said association right to suspend the payment of indebtedness by the association, however evidenced, for a period of six months.

"Upon consideration whereof State Corporation Commission is of the opinion, as heretofore found prior to the entry of the order herein of March 28, 1936, that Citizens Mutual Building Association, Incorporated, is confronted with an emergency due to probable withdrawals of funds and otherwise, and that the request of Citizens Mutual Building Association, Incorporated, for an order of suspension should be granted.

"It is, therefore, ordered that the Citizens Mutual Building Association, Incorporated, be and it hereby is authorized and directed to suspend the payment of indebtedness by the association, however evidenced, for a period of six months from March 28, 1936, to-wit: until the close of business on the 28th day of September, 1936, unless otherwise directed or permitted by the State Corporation Commission; and that the matter remain on the docket of the Commission as on general continuance until the further order of the Commission.

"IT IS FURTHER ORDERED THAT TWO ATTESTED COPIES HEREOF be delivered to Citizens Mutual Building Association, Incorporated, or to Delamater Davis, its counsel."

We observe that the order operated solely upon the building association. It did not attempt to enjoin the plaintiff from prosecuting her suit, nor did it purport to prohibit or stay the trial court from proceeding with the cause.

Turning to the action of the trial court we find that its order provides:

"This day came again the parties, by their attorneys, and the plaintiff's demurrer to the Special Plea filed by the defendant, having been fully heard by the Court, is sustained, to which the defendant duly excepted.

"Therefore, it is considered by the Court that the plaintiff recover of the defendant the sum of Five Hundred ($500) Dollars, with interest at the rate of six per centum per annum from January 1, 1936, until paid, and her costs by her in this behalf expended due on a certain bond.

"To which judgment of the Court the defendant duly excepted."

This order of the trial court did not "review, reverse, correct or annul" that of the Commission. Indeed, it made no reference thereto. There was no attempt by the trial court to "interfere with the Commission in the performance of its official duties."

What the trial court reviewed was the statute itself,—the act of the legislature,—not the "action of the Commission." For it was the statute and not the Commission's order which said that during such period as any building association had been authorized and directed by an order of the Commission to suspend the payment of its indebtedness "no court shall entertain a suit or action therefor against such association."

The trial court held that the act of the legislature was unconstitutional insofar as it attempted to give to the Commission the power to suspend for a period the payment of the plaintiff's claim and to oust the jurisdiction of the trial court with respect thereto during such period.

We think the court below was clearly within its power in passing upon the constitutionality of this statute, for we do not perceive in the above section of the Constitution any intention to prohibit such action. If the contention of the

building association be sound and followed to its logical conclusion, then the constitutionality of every statute, however far afield it may go in attempting to confer jurisdiction on the State Corporation Commission, may be tested only in a proceeding originating in that tribunal, even though, as here, the stutute under review may likewise affect the jurisdiction of some other court.

It is inconceivable that the framers of the present Constitution ever intended that litigants should no longer look to those courts which, since the foundation of the Commonwealth, have had jurisdiction of similar matters involving purely private contracts between persons and corporations,—tribunals which are conveniently located to the parties and equipped with trial by juries and other machinery necessary to do complete justice between them,—but must present their claims through the State Corporation Commission, located, perhaps, remote from the scene of the cause of action and from the residence or place of business of the parties, and unequipped with the machinery necessary for doing complete justice in such matters.

Having correctly, as we think, reached the conclusion that the statute depriving it of jurisdiction to hear the plaintiff's claim against the building association was unconstitutional and void, the trial court was free to proceed with the cause and to enter a final judgment therein.

On the whole, our conclusion is that the judgment of the trial court is right and should be affirmed.

*Affirmed.*