WATERVILLE REALTY CORPORATION *vs.* CITY OF EASTPORT.

Kennebec.      Opinion, October 31, 1939.

*Harvey D. Eaton*, for plaintiff.

*Franz U. Burkett*, Attorney General of Maine,

*Ralph W. Farris*, Assistant Attorney General of Maine, for defendant.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

HUDSON, J. Assumpsit on a negotiable twenty-year coupon bond issued by the City of Eastport on January 1, 1915. Plea, general issue with brief statement "that the plaintiff is barred from proceeding with this action on the ground that a Board of Emergency Municipal Finance was created under Chap. 284 of P. L. of 1933 and amended by Chap. 233 of P. L. 1937, providing that no suit shall be brought against the City of Eastport until the commission has relinquished its authority, and the said City of Eastport was taken over by said Board on Dec. 23, 1937." Having so pleaded, the "defendant claimed a continuance as matter of right." The justice below, hearing the case without intervention of jury, stated and ruled:

"The sole issue presented to the Court was the validity of the Statutes set forth in the defendant's brief statement.

"If the Statutes are invalid, the plaintiff is entitled to judgment upon his claim. If the Statutes are valid, the defendant is entitled to a continuance as a matter of right. I rule that the defendant is entitled to a continuance as a matter of right.

"The same is to stand continued."

To this ruling the plaintiff excepted.

The defendant presents several reasons why the exceptions should not be heard. First it says that the justice exercised judicial dis-

cretion in granting the continuance and that in the absence of abuse of discretion his ruling is not exceptionable. As to this contention, it need only be said that the justice, rather than exercising discretion, ruled that the defendant was entitled to the continuance *as a matter of right*.

Again it objects that the exceptions fail to set forth that the plaintiff was aggrieved by the ruling, but "The bill shows what the issue is and how the excepting party is aggrieved. It satisfies the requirements laid down by this Court in *Jones* v. *Jones et al.*, 101 Me., 447." *State* v. *Mooers*, 129 Me., 364, 369, 152 A., 265, 268. When the ruling is such that the exceptions show, without so stating, that the exceptant is aggrieved, it is sufficient.

It also asserts that where the privilege to present exceptions after the end of the term is not reserved with consent of the parties during the term, they can not be allowed thereafter. Undoubtedly this is law in this state. But nothing in these exceptions shows that this privilege was not reserved. The fact that they were allowed raises a strong presumption that they were properly allowed by the presiding Justice.

Again it insists that the case having been heard without the intervention of a jury, exceptions to rulings in matters of law do not lie unless there has been an express reservation of the right to except, and it is so held in *Frank* v. *Mallett*, 92 Me., 77, 79, 42 A., 238. But again it does not appear that there was no such express reservation.

> ". . . in the absence of anything in the bill to show the contrary, the certificate of the presiding Justice that the exceptions are 'allowed' is conclusive as to their being rightfully allowed in this respect." *State* v. *Intox. Liquors*, 102 Me., 385, 390.

Involved in this case is the constitutionality of a portion of Section 7 of Chapter 284 of the Public Laws of 1933 as amended by Section 3 of Chapter 233 of the Public Laws of 1937, reading as follows:

> "During the time said commissioner or commissioners are in charge of the administration of any city, town or plantation, no suit shall be brought or maintained against such commis-

sioner or commissioners nor against the said municipality, and the enforcement of all claims, liens, debts, judgments, attachments or other actions then pending or subsisting against said municipality shall be suspended and continued until said commissioner or commissioners shall have completed their duties and relinquished their authority over such municipality, except that they may authorize the payment of any such claims in their discretion prior to such relinquishment. During the period of the control by said commissioner or commissioners, the statute of limitations shall not run on any obligations of the city, town or plantation."

As to duration of power of the board, Section 8 of Chapter 284, as amended by Section 4 of Chapter 233, P. L. 1937, reads:

"Said board shall continue in charge of the government and financial affairs of said city, town or plantation until such time as its taxes due the state, or loans made therefor, expenses or obligations incurred by said commissioner or commissioners, or the board of emergency municipal finance shall have been paid and until in the opinion of the commissioner or commissioners, or the emergency municipal finance board, the financial affairs of said city, town or plantation may be resumed under local control."

The claim of unconstitutionality is the asserted violation of Article I, Section X of the Federal Constitution declaring that no state shall pass any law "impairing the Obligation of Contracts."

Is there an impairment? In *Phinney* v. *Phinney*, 81 Me., 450, 17 A., 405, 407, while recognizing "that a state to a certain extent and within proper bounds may regulate the remedy," the court holds that "if by subsequent enactment it so changes the nature and extent of existing remedies as materially to impair the rights and interests of a party in a contract, this is as much a violation of the compact as if it absolutely destroyed his rights and interests. The constitutional prohibition secures from attack not merely the contract itself, but all the essential incidents which render it valuable and enable its owner to enforce it." Cited in the Phinney case is *Louisiana* v. *New Orleans*, 102 U. S., 206, with this quotation:

"The obligation of a contract, in the constitutional sense, is the means provided by law by which it can be enforced, — by which the parties can be obliged to perform it. Whatever legislation lessens the efficacy of those means impairs the obligation. If it tend to postpone or retard the enforcement of the contract, the obligation of the latter is to that extent weakened."

Our Court then said, 81 Me., on page 462; 17 A., on page 407:

"The result arrived at in all the decisions, bearing upon this question, seems to be that the legislature may alter or vary existing remedies, provided that in so doing, their nature and extent is not so changed as materially to impair the rights and interests of parties to existing contracts."

In *Richmond Mortgage & Loan Corporation, Appellant* v. *Wachovia Bank & Trust-Company et al.*, 300 U. S., 124, 57 S. Ct., 338, 81 Law Ed., 552, decided February 1, 1937, the Supreme Court stated the applicable principle pertaining to impairment of a contract by modification, limitation, or alteration of the remedy as follows:

"The legislature may modify, limit or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing, it may not deny all remedy or so circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right."

This principle is confirmed in the recent case of *Honeyman, Appellant* v. *Jacobs et al.*, decided April 17, 1939, and reported in Vol. 83, No. 13, Law Ed., Adv. Ops., on page 660.

In *Peabody* v. *Stetson*, 88 Me., 273, 34 A., 74, 77, this Court approvingly quoted this from *Edwards* v. *Kearzey*, 96 U. S., 607:

"The obligation of a contract includes everything within its obligatory scope. Among these elements nothing is more important than the means of enforcement. This is the breath of its vital existence. Without it, the contract, as such, in the view of the law, ceases to be, and falls into the class of those imperfect obligations, as they are termed, which depend for their fulfilment upon the will and conscience of those upon whom

they rest. The ideas of right and remedy are inseparable. Want of right and want of remedy are the same thing. . . . The laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This rule embraces alike those which affect its validity, construction, discharge and enforcement."

We hold that that part of Section 3 of Chapter 233, P. L. 1937, which forbids the commencement and maintenance and compels suspension and continuance of actions brought to enforce payments of debts and satisfaction of obligations of municipalities taken over under this act, impairs the obligation of contracts.

But it seems, by recent decisions of the U. S. Supreme Court (by which this Court, agreeing or not, is bound), that there may be a valid impairment of obligations of contracts during a public emergency by proper exercise of the police power of the state. Perhaps the leading Supreme Court decision so holding is *Home Building & Loan Asso.* v. *Blaisdell,* 290 U. S., 398, 54 S. Ct., 231, 78 Law Ed., 413, in which the Chief Justice said, 78 Law Ed., on pages 429 and 430:

"It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by a great public calamity such as fire, flood, or earthquake. . . . And if state power exists to give temporary relief from the enforcement of contracts in the presence of disasters due to physical causes such as fire, flood or earthquake, that power cannot be said to be non-existent when the urgent public need demanding such relief is produced by other and economic causes."

In that case the court sustained the validity of the Minnesota mortgage moratorium statute as against the claim it violated said Section X of Article I of the Federal Constitution. The majority of the court held that the legislation was temporary in operation and limited to the exigency which called it forth. It is to be noted that that decision is based squarely on the existence of a public emerg-

ency warranting the exercise of the police power of the state. The Chief Justice in his opinion quoted this language from *Manigault* v. *Springs*, 199 U. S., 473, 50 Law Ed., 274, 26 S. Ct., 127:

> "It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals."

Legislation enacted under the police power in a time of such an emergency must not only be addressed to a legitimate end, but the measures taken must be reasonable and appropriate thereto. *Des Moines Joint Stock Land Bank* v. *Nordholm*, 253 N. W., 701, 705 (Iowa); *Home Building & Loan Asso.* v. *Blaisdell*, supra; *Nebbia* v. *People of the State of New York*, 78 Law Ed., 940, 291 U. S., 502, 54 S. Ct., 505.

In *Honeyman* v. *Hanan*, 9 N. E. (2d), 970, 275 N. Y., 382, the New York Court of Appeals said on page 975:

> "We hold only that reasonable limitations and restrictions may be placed upon actions to recover the debt, in order to meet conditions which constitute an imminent danger to the public welfare."

The limitations on the doctrine announced in the *Blaisdell* case, *supra*, are set forth in an opinion by Chief Justice Hughes in the later case of *W. B. Worthen Co.* v. *Thomas*, 292 U. S., 426, 54 S. Ct., 816, 818, 78 Law Ed., 1344, in which he stated:

> "We held in *Home Bldg. & L. Asso.* v. *Blaisdell*, supra . . . , that the constitutional prohibition against the impairment of the obligation of contracts did not make it impossible for the State, in the exercise of its essential reserved power, to protect

the vital interests of its people. . . . We held that when the exercise of the reserved power of the State, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. This is but the application of the familiar principle that the relief afforded must have reasonable relation to the legitimate end to which the State is entitled to direct its legislation."

In *Citizens Mut. Bldg. Ass'n* v. *Edwards*, 189 S. E., 453 (Virginia), it was held that the statute then under consideration, which gave to the corporation commission the power to suspend or limit the payment of indebtedness by any building association for such period as the commission might determine and which deprived the courts of jurisdiction to entertain a suit or action against such association during such period, so far as it applied to a contract made before the passage of said law, violated said Section X of Article I of the United States Constitution. The court pointed out that "The Virginia act is unlimited in duration and is not confined to the period of any public emergency." Speaking of the Minnesota moratorium statute, the court said on page 457, it "was predicated upon a public emergency which was declared by the Legislature to be in existence as a result of the severe financial and economic depression then sweeping over the country," and then differentiated the Virginia statute by declaring that it had no such foundation and said: "It simply provides for a moratorium at the hands of the State Corporation Commission for 'any association facing an emergency due to withdrawal of funds or otherwise.' Such broad language includes not only an emergency affecting the public as a whole, but also an emergency confined solely to the affairs of the particular association, even though such may be brought about by the mismanagement or misconduct of its officers or employees. The power of suspension may be invoked in normal as well as in abnormal times; in periods of prosperity and in times of distress."

In *First Trust Joint Stock Land Bank of Chicago* v. *Arp*, 283 N. W., 441 (Iowa), the court says on page 443:

"Emergency in order to justify the intervention of the reserve police power must be temporary or it cannot be said to be

an emergency. If a so-called emergency exists beyond a temporary period then it is no longer an emergency but a status and can furnish no basis or authority for legislative action in contravention of or inconsistent with the provisions of the State and Federal constitutions."

In 11 Am. Jur., Section 252, it is stated:

"The rule is well settled that if emergency statutes are promotive of the public welfare, they are a valid exercise of the police power. The contention is often made that emergency police measures in the nature of moratoria violate that clause of the Federal Constitution forbidding any state to pass laws impairing the obligation of contracts. The general principle arising from the decisions is that such police measures may be valid although temporarily impairing the power to enforce contracts. . . . It cannot be maintained that the constitutional prohibition should be so construed as to prevent limited and temporary interpositions with respect to the enforcement of contracts if made necessary by urgent public need produced by economic causes. Thus, the police power may be exercised without violating the true intent of the provision forbidding impairment of the obligation of contracts, in directly preventing by a temporary and conditional restraint the immediate and literal enforcement of a contractual obligation, where vital public interests would otherwise suffer.

"In the enactment of emergency police measures, the question as to whether an emergency exists is primarily for the legislature to determine. Such determination, although entitled to great respect is not conclusive because the courts, in such cases, possess the final authority to determine whether an emergency in fact exists."

Then will application of the principles of law declared in the above citations permit a holding that this statute is constitutional as a proper exercise of the police power? We do not think so. It is not clear that such a *public* emergency existed as would warrant its exercise. The fact that this statute was not enacted "in case of emergency" in denial of the right of referendum (Constitution of

Maine, Amendment XXXI), while not conclusive on the question of public emergency, is of some significance. The entitling of the act as one "Creating a Board of Emergency Municipal Finance," without expression of facts in a preamble constituting a public emergency, does not compel a conclusion that there was a public emergency rather than one solely private affecting, for instance, only certain municipalities. We do not take judicial notice of the fact that more than a very few cities and towns in this state were so badly involved financially when this statute was enacted that there was "an urgent public need" for the enactment of such legislation.

But assuming a public emergency then to have existed, there is nothing in this record to show, nor do we take judicial notice of the fact, that such an emergency had not ceased when this action was brought. Did we validate this act as public emergency legislation, it could have efficacy only as long as such an emergency continued. *Home Building & Loan Asso.* v. *Blaisdell,* supra.

This statute was not enacted to have effect only during a period of public emergency. It was to be effective not only until the municipality's state taxes should be paid, together with the expenses and obligations of the Board of Emergency Municipal Finance, but thereafter it would still be operative "until in the opinion of the commissioner or commissioners, or the emergency municipal finance board, the financial affairs of said city, town or plantation" might "be resumed under local control."

Thus, this statute (as it was held in *Citizens Mut. Bldg. Ass'n* v. *Edwards,* supra, the Virginia statute did) would permit the Emergency Municipal Finance Board to exercise its powers "in normal as well as in abnormal times; in periods of prosperity and in times of distress." Although it has been held by the Supreme Court that a state in time of public emergency may by proper exercise of its police power constitutionally impair the obligation of contracts, yet this statute can not be held to be constitutional for the reason that it fails to impose the "reasonable limitations and restrictions" necessary to constitute a *proper* exercise of the state police power.

The mandate must be,

*Exceptions sustained.*