## DARR et al. v. MUTUAL LIFE INS. CO. OF NEW YORK.

### No. 35466.

District Court, S. D. New York.

July 11, 1947.

Stanley Faulkner, of New York City (Raymond S. Harris, of New York City, on the brief), for plaintiffs.

Louis W. Dawson, of New York City (Joseph V. Lane, Jr., of New York City, of counsel), for defendant.

HINCKS, District Judge.

Before the entry of judgment upon my findings and conclusions dated April 30, 1947, wherein I indicated that the plaintiffs under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., were entitled to recover the sum of $660 in the aggregate by way of premium for overtime work performed in 1940 and $660 additional by way of liquidated damages, the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 251 et seq., was enacted. Thereupon the defendant moved to reopen the case to permit it to plead, and prove if it can, the new defenses provided in Sections 9 and 11 of said Act

for cases in which the court is not deprived of jurisdiction by Section 2 of the Act.

It may be noted that the recovery indicated by my findings as allowable was for overtime premiums earned prior to December 6, 1940. Thus the period involved was prior to the date of decision in United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 and Polish Nat. Alliance v. National Labor Relations Board, 322 U.S. 643, 64 S.Ct. 1196, 88 L.Ed. 1509, when for the first time the Supreme Court held that the business of insurance was interstate commerce. Prior to that time it had been generally believed, I think, that such business was not within the scope of the commerce clause and hence not subject to the Fair Labor Standards Act. Such was the background of my finding, already made, that under the terms of employment of the contracts here involved premiums for overtime were not provided and that the parties did not understand that the employment was covered by the Act.

The plaintiffs contend that their right to the compensation for their services indicated by the Fair Labor Standards Act constituted a vested right protected by the Fifth Amendment from impairment by legislation enacted after the time when their services had been rendered even though they then, like the defendant, had not supposed that the Fair Labor Standards Act was applicable. This contention is predicated upon the assumption that the contract of employment must be deemed to have incorporated the provisions of the Fair Labor Standards Act. The assumption seems in accord with the observation in Williston on Contracts, 3rd Ed., § 615, that "it is commonly said that existing laws form a part of a contract and are incorporated in it."

If the assumption above stated were warranted and if the relationship between the parties had been purely private and a matter of no public concern, I incline to believe that legislation, enacted after the formation of the contract and after its performance at least on one side, would not have been competent to impair the plaintiffs' rights. Coombes v. Getz, 285 U.S. 434, 52 S.Ct. 435, 76 L.Ed. 866; Ettor v. Tacoma, 228 U.S. 148, 33 S.Ct. 428, 57 L.Ed. 773; Steamship Co. v. Joliffe, 2 Wall. 450, 17 L.Ed. 805; Treigle v. Acme Homestead Ass'n, 297 U. S. 189, 56 S.Ct. 408, 80 L.Ed. 575, 101 A.L.R. 1284; Lynch v. United States, 292 U.S. 571, 583, 54 S.Ct. 840, 78 L.Ed. 1434; Duke Power Co. v. South Carolina Tax Com., 4 Cir., 81 F.2d 513; Badger v. Hoidale, 8 Cir., 88 F.2d 208, 109 A.L.R. 798; United States v. Heinrich, D.C., 12 F.2d 938, affirmed on another point 9 Cir., 16 F. 2d 112; Preveslin v. Derby & Ansonia Developing Co., 112 Conn. 129, 151 A. 518, 70 A.L.R. 1426. Some of these cases, to be sure, related to the effect of the Fourteenth Amendment on rights derived from State statutes. But the same principle is applicable to the protection of rights arising from federal statute. Lynch v. United States, and Heinrich v. United States, supra.

But Williston, in the section cited above, goes on to demonstrate the excessive fictitiousness of the rule quoted above and concludes: "Doubtless law frequently is adopted by the parties as a portion of their agreement. Whether it is or not in any particular case should be determined by the same standard of interpretation as is applied to their expressions in other respects." And in Sec. 605 Williston advocates as an authoritative and sound standard of interpretation for informal agreements, such as the contracts of employment involved here, "a standard of reasonable expectation, which would attach to words or other manifestations of intention the meaning which the person to whom the manifestations are addressed might reasonably give to them." If the contracts here involved be thus interpreted it is plain that the requirement of premium pay for overtime was not an integral part of the contract but rather a statutory incident thrust upon the parties which Congress at its pleasure might modify or annul. Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682; Campbell v. Holt, 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483; Norris v. Crocker, 13 How. 429, 14 L.Ed. 210; United States ex rel. Rodriguez v. Weekly Publications, 2 Cir., 144 F.2d 186; Danforth v. Groton Water Co., 178 Mass. 472, 59 N.E. 1033, 86 Am.St.Rep. 495; Robinson v. Robins Dry Dock & Repair Co., 238 N.Y. 271, 144 N.E. 579, 36 A.L.R.

1310. It may be noted that this view of the employment contracts is consistent with references in the cases cited to the employees' rights to the prescribed payments as "statutory" rather than contractual. Tennessee Coal, Iron & R. Co. v. Muscoda Local, No. 123, 321 U.S. 590, at pages 602, 603, 64 S.Ct. 698, 88 L.Ed. 949, 152 A.L.R. 1014; Jewell Ridge Coal Corp. v. United Mine Workers, 325 U.S. 161, at page 167, 65 S.Ct. 1063, 89 L.Ed. 1534.

In Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, at page 715, 65 S.Ct. 895, at page 906, 89 L.Ed. 1296, it was held that the provision of the Fair Labor Standards Act for liquidated damages constitutes compensation for delay in the "payment of sums due under the Act" in lieu of interest on the sums due which "is customarily allowed as compensation for delay in payment." In Standard Oil Co. of California v. United States, 9 Cir., 107 F.2d 402, at page 418, it was held that a statute retroactively exonerating one whose conversion of oil though wrongful was done in good faith from the payment of interest as damages was not unconstitutional. The same principle would seem to sustain the validity of Section 11 of the Portal-to-Portal Act.

However, there is no occasion for present purposes to determine whether the rights involved should be viewed as of statutory or contractual texture. For in either classification the rights pertained to a relationship which was not a purely private affair of no public concern. The constitutionality of the Fair Labor Standards Act of 1938 was sustained because its provisions, including its preamble, made it plain that the shape of relationships such as those between the parties here were thought by Congress to mesh closely with the public interest. United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 457, 85 L.Ed. 609, 132 A.L.R. 1430. In the opinion in that case it was observed that "it is no objection to the assertion of the power to regulate interstate commerce that its exercise is attended by the same incidents which attend the exercise of the police power of the states."

■ The Portal-to-Portal Act cultivates the same legislative field. It regulates and refines the same relationships. And to the extent that it purports to modify rights and obligations created by the earlier Act it too, as is shown by its preamble and by its legislative history, was designed to promote the public interest by the exercise of a power akin to the police power of a state.

■ It is, of course, familiar doctrine that a proper exercise of its police power by a state, notwithstanding its effect on private rights, does not offend the due process requirements of the Constitution. Corvallis Creamery Co. v. Van Winkle, D.C., 274 F. 454; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330; Hudson County Water Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529, 52 L.Ed. 828, 14 Ann.Cas. 560.

■ Similar doctrine, notwithstanding the Tenth Amendment, now seems to have a foothold in the federal field. In Lynch v. United States, supra, the court said at page 579 of 292 U.S., at page 843 of 54 S.Ct., 78 L.Ed. 1434, that if obligations even of the government itself have once been legally entered into, "the due process clause prohibits the United States from annulling them, unless, indeed, the action taken falls within the federal police power or some other paramount power." See also Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 40 S.Ct. 106, 64 L.Ed. 194, and Virginian Ry. Co. v. System Federation, No. 40, etc., 300 U.S. 515, 558, 57 S.Ct. 592, 81 L.Ed. 789.

In Norman v. Baltimore & Ohio R. R. Co., 294 U.S. 240, at page 307, 55 S.Ct. 407, at page 416, 79 L.Ed. 885, 95 A.L.R. 1352, a case in which the currency clause of the Constitution was directly involved, the Court said: "Contracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but, when contracts deal with a subject matter which lies within the control of the Congress, they have a congenital infirmity. Parties cannot remove their transactions from the reach of the dominant constitutional power by making contracts about them." This same principle, as the court there observed with pertinent citations, has "familiar illustration in the exercise of the power to regulate commerce." And the principle has been recently applied by the Supreme Court of

Texas in the case of National Carloading Corp. v. Phœnix-El Paso Express, Inc., 142 Tex. 141, 176 S.W.2d 564.

In Brooklyn Savings Bank v. O'Neil, supra, a right such as that asserted by the plaintiffs here was described as a right of "private-public character". Such a right, I conclude, whether deemed the creature of statute or of contract, is not one in which a private party may acquire a vested interest. It is a right which may be modified or annulled by Congress in accordance with the Congressional conception of the public need without provision for compensation.

This conclusion makes it unnecessary to decide whether Sections 9 and 11 of the Portal-to-Portal Act of 1947 do indeed impair any actual rights of the plaintiffs or whether, as the defendant contends, they merely reassert the original Congressional intent as to the effective scope of the Fair Labor Standards Act and in any event go no further than to modify the remedies therein provided.

It is accordingly ordered that the defendant's motion to reopen be granted.