FIREFIGHTERS' AND POLICEMEN'S ARBITRATION LAW Initiation of arbitration under the Firefighters' and Policemen's Arbitration Law does not suspend, abrogate, supersede, void or terminate an existing contract between the negotiating parties. An existing contract, made prior to the initiation of negotiations under this arbitration law, would continue in force until terminated by its own provisions, until expressly revoked by a new agreement, or until a new contract covering the same subject matter, but with inconsistent terms is excluded by the original parties. The Attorney General has considered your opinion request wherein you ask the following two questions relating to the "Firefighters' and Policemen's Arbitration Law," 11 O.S. 548.3 [11-548.3] (1972) et seq.: 1. Does arbitration under this act suspend, abrogate, supersede, void or terminate an existing contract between the negotiating parties? 2. If the answer to the first question is in the negative, is it your opinion that an existing contract, made prior to the initiation of negotiations, under this act continues in force until a new contract is agreed upon? Article I, 10 of the United States Constitution provides: "No State shall . . . pass any . . . law impairing the obligation of contracts. . . ." Article II, Section 15 of the Oklahoma Constitution provides: "No . . . law impairing the obligation of contracts, shall ever be passed." Each "contract clause" refers to state laws enacted after the execution of the contract whose obligation is asserted to be impaired. Schlothan v. Territory of Alaska, 276 F.2d 806, 814 (9th Cir. 1960); Walker v. Nix, 196 Okl. 365, 165 P.2d 378 (1946). The Firefighters' and Policemen's Arbitration Law originally became effective March 11, 1971. Some of the provisions were subsequently amended and the amendments became law April 6, 1972. If the "existing contract" you refer to was in effect before March 11, 1971, the contract clauses would prohibit Oklahoma law from impairing operation of the contract, except under police power conditions which are not in evidence here. Patterson v. Stanolind Oil and Gas, 182 Okl. 155, 77 P.2d 83 (1938); Treigle v. Acme Homestead Association, 297 U.S. 189, 56 S.Ct. 408,80 L.Ed. 575 (1936). If the "existing contract" was formed after March 11, 1971, it would be subject to Section 548.3 et seq., as well as all other laws in force at the time the contract was executed. Tom P. McDersnott, Inc. v. Bennett, Okl., 395 P.2d 566, 570 (1964). However, Section 11 O.S. 548.3 [11-548.3] et seq. does not define arbitration or tell the effect of arbitration on an existing contract. Specific references are made to "collective bargaining," but not to "arbitration." Title 11 O.S. 548.3 [11-548.3](7) (1972), provides: " 'Collective bargaining' shall mean the performance of the mutual obligation of the municipal employer or his designated representative and the representative of the employees to meet at reasonable times, including meetings appropriately related to the budget making process; to confer in good faith with respect to wages, powers and other conditions of employment, or the negotiation of an agreement, or any questions arising thereunder; and to execute a written contract incorporating any agreement reached if requested by either party. Such obligation shall not, however, compel either party to agree to a proposal or require the making of a concession." Title 11 O.S. 548.4A [11-548.4A] (1972), provides: "Firefighters, policemen, and municipal employees in any city, town or municipality, shall have the separate right to bargain collectively with their city, town or municipality and to be represented by a bargaining agent in such collective bargaining with respect to wages, salaries, hours, rates of pay, grievances, working conditions and all other terms and conditions of employment." The Legislature did not state that collective bargaining would in any way suspend or void an existing contract between the negotiating parties. Thus, arbitration, which is merely one step of the collective bargaining process, would not suspend or void an existing contract between the negotiating parties. The mere passage of 11 O.S. 548.3 [11-548.3] (1972) et seq. would not suspend or void an existing contract. Nor would the initiation of arbitration by parties to the original contract as provided by Section 548.3 et seq. in any way suspend or void an existing contract between the negotiating parties. The answer to your second question is found in Pasotex Petroleum Co. v. British-American Oil Producing Co., Okl., 431 P.2d 373 (1967), where the Supreme Court of Oklahoma stated: "If the parties to a contract make a new and independent agreement concerning the same matter and the terms of the latter are so inconsistent with those of the former that they cannot stand together, the latter may be construed to discharge the former." An existing contract between two parties, made prior to the initiation of negotiations between the same parties under Section 548.3 et seq., would continue in force until terminated by its own provisions, until expressly revoked by a new agreement, or until a new contract covering the same subject matter but with inconsistent terms is executed by the original parties. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Initiation of arbitration under the Firefighters' and Policemen's Arbitration Law does not suspend, abrogate, supersede, void or terminate an existing contract between the negotiating parties. An existing contract, made prior to the initiation of negotiations under this arbitration law, would continue in force until terminated by its own provisions, until expressly revoked by a new agreement, or until a new contract covering the same subject matter, but with inconsistent terms is executed by the original parties. (Daniel J. Gamino)