## HARRIS v. MONROE BUILDING & LOAN ASS'N.

### No. 4792.

Court of Appeal of Louisiana. Second Circuit.

May 4, 1934.

Elder & Elder, of Ruston, for appellant.

Hudson, Potts & Bernstein, of Monroe, for appellee.

DREW, Judge.

Plaintiff sued to recover the interest or dividends on 75 shares of full-paid stock issued by the defendant to plaintiff. Plaintiff alleged she was the owner of the stock, and, by the terms of the stock certificate, that defendant had agreed to pay her $1 per share per month on each of the 75 shares of stock.

She further alleged that the dividends were unpaid for the months of July, August, and September, 1932, and prayed for judgment in the sum of $225.

Defendant filed an exception of no cause of action, which was sustained by the lower court, which judgment was reversed by this court and the case remanded. See Harris v. Monroe Bldg. & Loan Association, 148 So. 489. Defendant then filed in the lower court a plea of estoppel based on section 55 of Act No. 140 of 1932, which reads as follows: "A member who has served notice of his intention to withdraw remains a shareholder, but shall have the status of, and be classified as, a withdrawing member; and his rights and privileges are prescribed, limited and defined exclusively by the provisions and restrictions of the present Statute. Except as stated in Section 53, no liabilities or losses as of a date subsequent to the time of the filing of his notice of withdrawal shall be chargeable or assessable against his shares; and from the date of said application and as long as his application for withdrawal has not been withdrawn, he shall not be entitled, except as hereinafter set forth, to any benefit on his shares beyond the collection of the face value thereof, nor to allowance or dividend in the distribution of the accumulated or current profits or earnings. No suit shall be instituted by a withdrawing shareholder against an association, its officers or representatives, except for a violation of the provisions of the present Statute, or to enforce compliance with said provisions. For such purpose and not otherwise, such a withdrawing shareholder shall be entitled, under such reasonable rules as the association may prescribe, to inspect the books and records of the association."

On the trial of the exception, it was agreed by counsel that plaintiff's stock was listed for withdrawal on July 20, 1932.

The lower court sustained the plea of estoppel and dismissed plaintiff's suit, from which judgment she has appealed to this court. In this court appellee has filed the following plea of prescription, acquiescence, waiver, and repose, based upon section 76 of Act No. 140 of 1932: "Into Court comes Monroe Building & Loan Association and shows to this Honorable Court that at the time of the filing of this suit, this plaintiff had placed all of her stock sued on herein, on the withdrawal list and that in accordance with Act No. 140 of 1932 of the Legislaturé of the State of Louisiana, this plaintiff is estopped to file any suit against this defendant association except for violation of or to enforce compliance with said Act, which estoppel respondent specially pleads."

Slight mention of this plea was made in the argument of the case, and neither appellant nor appellee has filed brief pertaining to it here. This provision of the act can have no effect on one who has a cause of action against a building and loan association. It is wholly unreasonable and is an attempt by the Legislature to force shareholders and others interested in the association to call upon the courts to render declaratory judgments which are not permitted under our law. Certainly one without a cause of action or grievance against such an association cannot be forced to file suit against said association or else be forever barred from suing, should a cause of action arise later.

The act to be unconstitutional must violate the provisions of the State or Federal Constitution, or both, and, when it does either, the act is null and void. A Legislature cannot deprive any one of his right to attack the constitutionality of an act; neither can it fix a time in which the attack must be made. To sustain the validity of section 76 of Act No. 140 of 1932 would mean that the Legislature of this state would have the power to destroy all the rights and guaranties offered the citizens of this state by both the State and Federal Constitutions.

#### Plea of Estoppel.

It is admitted that this suit is not for violation of the provisions of Act No. 140 of 1932, and is not to enforce compliance with any of the provisions of said statute. Therefore the only question is the constitutionality of Act No. 140 of 1932, especially section 55 thereof.

Act No. 140 of 1932 expressly repealed Act No. 120 of 1902 and Act No. 280 of 1916, by stating that said acts were superseded by the corresponding and relevant provisions of Act No. 140 of 1932. The acts of 1902 and 1916 were in effect and were the law governing withdrawals at the time plaintiff acquired her stock, and were also the law in effect at the time plaintiff listed her stock for withdrawal with defendant, and it is conceded that, under the law at that time, the listing of the stock for withdrawal did not deprive plaintiff of her rights under her contract, as set out in the face of the stock certificate, to continue to collect and be paid by defendant the $1 per share per month on stock owned by her in defendant association, and did not prohibit the filing of suit against

defendant for that purpose after the stock was listed for withdrawal. Therefore, unless the provisions of section 55 of Act No. 140 of 1932 are constitutional and binding on plaintiff, she is not estopped from suing for dividends due.

Plaintiff contends that section 55 of Act No. 140 of 1932 is unconstitutional for the reason that it violates the obligation of contract and that it divests vested rights. Defendant contends that said section of said act only regulates the remedy and is therefore constitutional; and further contends that said act was an emergency act and authorized under the police powers of the state in its regulation of quasi public corporations, of which defendant is one.

The contention of plaintiff is well founded. Under its contract, set out in the stock certificate and the law in effect at the time, she was guaranteed payment of $1 per month per share on each share of stock of said defendant association owned by her. This was the moving consideration for her placing her money ($15,000) in said association in return for full paid-up stock. The only profit she could receive from said association was the $1 per share, regardless of the amount earned by the association, and, although said amount was due her, she could not collect it until it was earned. See former opinion, 148 So. 489.

Under said contract as above described, plaintiff was guaranteed $1 per month per share dividend up to the time she was actually paid her money, under the plan of withdrawal then in effect, although she had listed her stock for withdrawal long prior to the time she was paid. The listing of the stock for withdrawal did not cause the dividends contracted to be paid to cease, and did not deprive her of the right to file suit. Act No. 140 of 1932, § 55, completely wiped out and changed the contract, as set out in the stock certificate, by causing the dividends guaranteed therein to cease becoming due after the stock had been listed for withdrawal even though the stock should remain on the withdrawal list for several years, as in the present case, and further prohibited the withdrawing shareholder to file suit for said dividends.

We are of the opinion that section 55 of said act clearly violates the obligation of contract and divests plaintiff of a vested right under her contract with defendant. Article 4, § 15, Louisiana Constitution. The section of the act in controversy does not only regulate the remedy, but impairs and divests substantial rights legally acquired. Cassard v. Tracy, 52 La. Ann. 835, 27 So. 368, 49 L. R. A. 272.

■■ The obligation of a contract is that which the law in force when the contract is made obliges the parties to do or not to do; the remedy, the legal means to carry it into effect. A subsequent law, which exempts all, or even part, of the debtor's property from execution, would therefore be unconstitutional. Likewise a subsequent law which would exempt a part of the debtor's obligation to do or to pay is unconstitutional. Sabatier v. His Creditors, 6 Mart. (N. S.) 585; Arnaud v. Arnaud, 3 La. 336; Daquin v. Coiron, 3 La. 404; Rowlett v. Shepherd, 4 La. 86; State v. Bermudez, 12 La. 352; Forstall v. Consolidated Ass'n, 34 La. Ann. 770; Atchafalaya R. Co. v. Bean, 3 Rob. 414.

■ Defendant's contention is that, although the act in question does violate the obligation of contract and divests vested rights, it is constitutional for the reason that it is emergency legislation and authorized under the police powers of the state. Assuming an emergency did exist in Louisiana which furnished a proper occasion for the exercise of the reserved powers of the state to protect the vital interests of the community, we are of the opinion that the exercise of that power in this instance was unreasonable and was exercised in such a manner as to go far beyond the power reserved to the state to be used on such occasions.

In the case of Home Building & Loan Association v. Blaisdell, decided by the United States Supreme Court in October, 1933, reported in 290 U. S. 398, 54 S. Ct. 231, 242, 78 L. Ed. ——, 88 A. L. R. 1481, in which case the court was divided five to four, Chief Justice Hughes, in delivering the majority opinion, after reviewing many decisions, applied the criteria established by those decisions, as follows (after finding that an emergency did exist in Minnesota which furnished occasion for the exercise of the police power of the state):

"2. The legislation was addressed to a legitimate end; that is, the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society.

"3. In view of the nature of the contracts in question—mortgages of unquestionable validity—the relief afforded and justified by the emergency, in order not to contravene the constitutional provision, could only be of a character appropriate to that emergency,

and could be granted only upon reasonable conditions.

"4. The conditions upon which the period of redemption is extended do not appear to be unreasonable. The initial extension of the time of redemption for thirty days from the approval of the act was obviously to give a reasonable opportunity for the authorized application to the court. As already noted, the integrity of the mortgage indebtedness is not impaired; interest continues to run; the validity of the sale and the right of a mortgagee-purchaser to title or to obtain a deficiency judgment, if the mortgagor fails to redeem within the extended period, are maintained; and the conditions of redemption, if redemption there be, stand as they were under the prior law. The mortgagor during the extended period is not ousted from possession, but he must pay the rental value of the premises as ascertained in judicial proceedings and this amount is applied to the carrying of the property and to interest upon the indebtedness. The mortgagee-purchaser during the time that he cannot obtain possession thus is not left without compensation for the withholding of possession. Also important is the fact that mortgagees, as is shown by official reports of which we may take notice, are predominantly corporations, such as insurance companies, banks, and investment and mortgage companies. These, and such individual mortgagees as are small investors, are not seeking homes or the opportunity to engage in farming. Their chief concern is the reasonable protection of their investment security. It does not matter that there are, or may be, individual cases of another aspect. The Legislature was entitled to deal with the general or typical situation. The relief afforded by the statute has regard to the interest of mortgagees as well as to the interest of mortgagors. The legislation seeks to prevent the impending ruin of both by a considerate measure of relief.

"In the absence of legislation, courts of equity have exercised jurisdiction in suits for the foreclosure of mortgages to fix the time and terms of sale and to refuse to confirm sales upon equitable grounds where they were found to be unfair or inadequacy of price was so gross as to shock the conscience. The 'equity of redemption' is the creature of equity. While courts of equity could not alter the legal effect of the forfeiture of the estate at common law on breach of condition, they succeeded, operating on the conscience of the mortgagee, in maintaining that it was unreasonable that he should retain for his own benefit what was intended as a mere security, that the breach of condition was in the nature of a penalty, which ought to be relieved against, and that the mortgagor had an equity to redeem on payment of principal, interest and costs, notwithstanding the forfeiture at law. This principle of equity was victorious against the strong opposition of the common-law judges, who thought that by 'the Growth of Equity on Equity the Heart of the Common Law is eaten out.' The equitable principle became firmly established and its application could not be frustrated even by the engagement of the debtor entered into at the time of the mortgage, the courts applying the equitable maxim 'once a mortgage, always a mortgage, and nothing but a mortgage.' Although the courts would have no authority to alter a statutory period of redemption, the legislation in question permits the courts to extend that period, within limits and upon equitable terms, thus providing a procedure and relief which are cognate to the historic exercise of the equitable jurisdiction. If it be determined, as it must be, that the contract clause is not an absolute and utterly unqualified restriction of the state's protective power, this legislation is clearly so reasonable as to be within the legislative competency.

"5. The legislation is temporary in operation. It is limited to the exigency which called it forth. While the postponement of the period of redemption from the foreclosure sale is to May 1, 1935, that period may be reduced by the order of the court under the statute, in case of a change in circumstances, and the operation of the statute itself could not validly outlast the emergency or be so extended as virtually to destroy the contracts.

"We are of the opinion that the Minnesota statute as here applied does not violate the contract clause of the Federal Constitution. Whether the legislation is wise or unwise as a matter of policy is a question with which we are not concerned."

There is no temporary relief attempted by Act No. 140 of 1932. It is in the form of permanent legislation, and clearly deprives plaintiff of her dividends for all time, as well as all her right to sue the defendant. It does not merely postpone payment, but cancels the obligation of defendant to ever pay any dividends to her, since she has been placed on the withdrawal list. It does not only affect the remedy or procedure, but divests her of substantial rights granted to her under the contract with defendant.

We therefore conclude that the judgment

of the lower court is erroneous, and it is now ordered, adjudged, and decreed that section 55 of Act No. 140 of 1932 is unconstitutional and without effect in so far as it attempts to affect shareholders who acquired their stock or listed same for withdrawal prior to the passage of said act. The plea of estoppel is overruled, and the case is remanded to the lower court to be proceeded with in accordance with law; cost of appeal to be paid by appellee, and all other costs to abide the final outcome of the case on its merits.