FORET, Judge.
Ronnie Magnon (Plaintiff) brought this action to have a writ of mandamus issued directing defendant, Acadian Metropolitan Code Authority, to issue him a master’s electrical license, or to show cause to the contrary.
The trial court, after hearing, rendered judgment in favor of plaintiff making the writ peremptory and ordering defendant to issue plaintiff a master’s electrical license. We reverse.
Defendant appeals devolutively from the trial court’s judgment and raises the following issues:
(1) Whether a master’s electrical license can be issued to an individual only, or can it be issued to a corporation;
(2) Whether corporate income tax returns are relevant in making a determination of an applicant’s prime source of income, if a master’s electrical license can be issued only to an individual;
(3) Whether an applicant for a master’s electrical license must prove that electrical work provided his “prime source” of income for each of the five years preceding the date on which he applies for the license, or can he average his income from electrical work for those five years and his total income, and still meet the requirements of a “grandfather clause” for the issuance of such a license; and
(4)What does the term “reasonable proof” mean with respect to the requirements of the “grandfather clause”.
FACTS
Defendant was created in the early part of 1980, as an intergovernmental public corporate body [1] by ordinances adopted by the Lafayette Parish Police Jury and certain municipalities and villages within that parish [2]. At that time, the same public entities adopted what is known as the “Joint Services Agreement” (the agreement) and defendant was to administer the terms of that agreement. The agreement provides the following in Section I regarding defendant’s purpose:
“I
PURPOSE
The purpose of the Acadian Metropolitan Code Authority is to provide minimum requirements to safeguard life, health, and public welfare and the protection of property as it relates to these safeguards by regulating and controlling the design, construction, alteration, repair, equipment use and occupancy, location, maintenance, removal and demolition of all buildings or structures and appurtenances thereto.”
Plaintiff was a contractor who had constructed a number of houses in Lafayette Parish prior to the adoption of the agreement. Plaintiff apparently obtained two permits from defendant in the latter part of 1980 allowing him to perform electrical work on two houses he was constructing. However, when he called for defendant to inspect the work he had done, defendant refused to do so asserting that he needed a *974 master’s electrical license to perform such work. Plaintiff then applied for such a license on the basis of a “grandfather clause” contained in Section XVI of the agreement[3]. That section provides:
“XVI
ACADIAN METROPOLITAN CODE AUTHORITIES, SCOPE OF SERVICES
The Acadian Metropolitan Code Authority shall license all contractors in the trades governed by it. Licensing shall be as a result of successful completion of an exam conducted before the Acadian Metropolitan Code Authority Board of Regents, and subject to the regulations concerning the examination as put out by the Acadian Metropolitan Code Authority Board of Regents. However, all valid licenses now in effect for electrical, plumbing, and mechanical contractors issued by the City of Lafayette authorizing them to do business in the City of Lafayette shall be honored by the Acadi-an Metropolitan Code Authority and shall be deemed as prima-facie evidence of competence to hold such license. All contractors in the Parish exclusive of the jurisdiction of the City of Lafayette who show reasonable proof* that they have earned their living through the prime source of contracting in those specific trades for a period of at least five (5) years, shall be granted a license. It shall be illegal to practice a trade requiring a license without such license within the jurisdictional boun-dries of the Acadian Metropolitan Code Authority.
Defendant refused to issue plaintiff a master’s electrical license finding that plaintiff had failed to prove that he had earned his living through the prime source of electrical contracting for a period of at least five years. Plaintiff appealed defendant’s refusal to grant him a license to the Acadian Metropolitan Code Authority Advisory Electrical Board of Standards and Appeals (Advisory Board). Section XX(W)(e)(4) of the agreement provides the following regarding the powers and duties of the Advisory Board:
“(4) To act as a Board of Arbitration for the contractor, owner, or others who feel that' a decision regarding interpretation of the code or a refusal of variance to code is incorrect or unjust.” (Emphasis ours.)
Before the Advisory Board, plaintiff once again argued that he should be issued a master’s electrical license because he met the requirements for such as set forth in the “grandfather clause”. Ed Dauphin (Dauphin), defendant’s executive director, testified that the Advisory Board (rejected plaintiff’s appeal because he again failed to prove that electrical contracting had provided his prime source of income for five years.
Having exhausted his appeals under the agreement, plaintiff instituted this action on March 18, 1981, alleging that his prime source of income for the previous six years had been from electrical contracting.
WHO MAY OBTAIN A MASTER’S ELECTRICAL LICENSE UNDER THE AGREEMENT.
Defendant raises the issues of whether a corporation may obtain a master’s electrical license under the agreement and, if such a license can only be issued to an individual, whether corporate income tax returns are relevant in making a determination of an individual applicant’s prime source of income.
We find no need to engage in a discussion of either of these issues. The record clearly shows that plaintiff was applying for a master’s electrical license as an individual, and that the state and federal income tax returns introduced in evidence were the individual joint returns of plaintiff and his wife.
*975 PLAINTIFF’S PROOF OF HIS PRIME SOURCE OF INCOME
Defendant contends that the trial court committed manifest error in finding that plaintiff’s prime source of income, for the five years preceding the date on which he applied for his master’s electrical license, was electrical contracting[4]. Defendant argues that plaintiff failed to list his occupation as “electrical contractor” on his income tax returns and, instead, listed his occupation on his 1975 returns as tile worker and as a general contractor on his returns for 1976 through 1979.
We find that plaintiff’s failure to list his occupation as electrical contractor on his income tax returns in no way precludes him from proving that his prime source of income was actually electrical contracting during the time periods covered by those returns.
Defendant next argues that the “grandfather clause” requires that an applicant’s prime source of income be from the trade he seeks to be licensed in for each of the five years preceding the date of his application. It does not permit an applicant to average his income from the trade for the five-year period and then divide that figure by his average total income for the same period to show that the trade provided his prime source of income. However, there was evidence presented to the trial court by plaintiff in which he did just that, i.e., average his income over the five-year period preceding the date of his application to show that electrical contracting had provided his prime source of income during that time period.
Dauphin, defendant’s executive director, testified that he was the sole author of the agreement. He stated that it was his intent to require applicants to show that their prime source of income for each of the preceding five years be from the trade before issuing them a license under the “grandfather clause”. He also intended that the term “prime source” mean over 50% of an applicant’s income. The Advisory Board interpreted this requirement of the “grandfather clause” in the same manner.
The legislative grant of authority allowing parishes and municipalities to enter into agreements such as the one in this case is found in that part of the Revised Statutes known as “The Local Services Law”. See LSA-R.S. 33:1322.
LSA—R.S. 33:1323 provides:
“§ 1323. Liberal construction
This Part shall be construed liberally, to the end that, through the use of the arrangements provided herein, greater economy and efficiency in the operation of local services may be encouraged, and the benefits of such services may be extended.”
It has long been recognized in Louisiana that the valid exercise of the police power of a municipality requires that such actions be reasonably related to the public health, morals, and general welfare. The means adopted by an ordinance must be reasonably adapted to a public end and must not be arbitrary, oppressive, or unreasonable. City of Crowley Firemen v. City of Crowley, 264 So.2d 368 (La.App. 3 Cir. 1972), writ issued, 262 La. 1086, 266 So.2d 219 (1972), affirmed, 280 So.2d 897 (La.1973); Louisiana Gas Service Company v. Louisiana Public Service Commission, 245 La. 1029, 162 So.2d 555 (1964).
The court will not interfere with the exercise of legislative discretion nor substitute its own judgment for legislative discretion, except where the legislative action is so clearly arbitrary and capricious as to be unreasonable. City of Crowley Firemen v. City of Crowley, supra; Hunter v. City of Shreveport, 216 So.2d 140 (La.App. 2 Cir. 1968), writ denied, 217 So.2d 414 (La.1969).
We find that defendant, created as an agency and instrumentality of Lafayette Parish and some municipalities located therein to administer the terms of the agreement, has the power to interpret the *976 terms of the agreement. See Section XX(W)(e)(4) of the agreement, reproduced above. In the absence of a showing that defendant’s interpretation and application is unreasonable and/or arbitrary and capricious, a court should accept that interpretation. There has been no showing made in the case before us that defendant’s interpretation and application of the requirements of the “grandfather clause” is unreasonable and/or arbitrary and capricious, and we accept it.
Under the terms of the agreement, plaintiff must show by reasonable proof that he has earned his living through the prime source of electrical contracting for a period of at least five years to obtain a master’s electrical license. Reasonable proof is defined by the agreement as: “Documented evidence such as federal income tax files or a certified public accountants [sic] affidavit attesting to the facts.” We find that the listing of documentary evidence necessary to provide reasonable proof of an applicant’s ability to meet the requirements of the “grandfather clause” is merely illustrative, rather than exclusive.
Plaintiff introduced in evidence the individual joint federal and state income tax returns filed by him and his wife for the years 1975 through 1979. A review of those returns shows that it is impossible to discern, from them alone, whether plaintiff’s prime source of income for those five years came from electrical contracting. Aubrey Bourgeois, a CPA who had been handling plaintiff’s books for some three and a-half years, testified that he had signed an affidavit, introduced in evidence, in which he stated: “Therefore it is to my personal knowledge that Ronnie Magnon has derived and is deriving his living through the prime source of electrical contracting.” Bourgeois was asked in court to state the basis of his conclusion. He testified that he selected three of plaintiff’s jobs at random and made a determination of what percentage of plaintiff’s total profit on each job came from the electrical work performed by plaintiff. He stated that plaintiff’s electrical work accounted for 44.83%, 40%, and 57.73% of the total profit on each job, respectively.
Under cross-examination, Bourgeois admitted that all three jobs had been performed by plaintiff in 1980, and that he had no similar cost breakdowns for jobs performed in earlier years. He further admitted that he had no personal knowledge of what percentage of plaintiff’s income came from electrical contracting for the three years prior to 1980. Finally, as noted above, Bourgeois had been handling plaintiff’s financial records for only the past three and a-half years. Paul LeBlanc, an employee of the same accounting firm as Bourgeois, testified that he prepared income tax returns and that he was familiar with plaintiff’s income tax returns. He stated that, with the information plaintiff had submitted to the firm, there was no way he could determine what percentage of plaintiff’s profits came from any particular source.
Defendant introduced in evidence a transcript of plaintiff’s hearing on his appeal to the Advisory Board, where plaintiff was asked what percentage of his income was derived from electrical contracting work. Plaintiff replied that such work was producing 25% of his income. Plaintiff admitted that he had said this at the hearing and offered no explanation for doing so. He testified that he probably could find the receipts, etc. dating back to 1975, that were associated with the jobs he had done, although he usually didn’t keep such things for more than three years. The record shows that none of these receipts, etc. were introduced in evidence for any of the five years in which plaintiff claimed that his prime source of income was derived from electrical contracting.
It is our opinion that the trial court committed manifest error in finding that plaintiff had proved that he was entitled to be issued a master’s electrical license under the “grandfather clause”.
For the above and foregoing reasons, the judgment of the trial court is reversed. All costs of this appeal and in the trial court are assessed against plaintiff-appellee.
REVERSED.

. See LSA-R.S. 33:1324, LSA-R.S. 33:1332, and LSA-Const. Art. VI, § 20, authorizing the creation of such intergovernmental public corporate bodies.

. The municipalities and villages that entered into the agreement with the Lafayette Parish Police Jury are: the City of Lafayette; the Town of Broussard; the Town of Carenero, and the Village of Youngsville.

 Reasonable proof shall mean: Documented evidence such as federal income tax return files or a certified public accountants affidavit attesting to the facts." (Emphasis ours.)

. Plaintiff has not taken, nor has he requested, an examination conducted by the defendant to determine his qualifications for the license which he seeks.

. Actually, the trial court made no such specific finding. Instead, the trial court simply found that the law and evidence were in favor of plaintiff and against defendant.