449 So.2d 45 (1984)
J. Wayne TUCKER, et al.
v.
SPECIAL CHILDREN'S FOUNDATION, INC., et al.
No. 83 CA 0992.
Court of Appeal of Louisiana, First Circuit.
February 28, 1984.
Rehearing Denied April 3, 1984.
Writ Denied May 25, 1984.
*46 Stephen Riedlinger, Baton Rouge, for plaintiffs-appellees J. Wayne Tucker, et al.
Walter L. Comeaux, Baton Rouge, for defendants-appellants Special Children's Foundation, Inc., et al.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from the granting of a preliminary injunction. Plaintiffs-appellees, four residents of the East Oakcrest Subdivision in East Baton Rouge Parish, filed suit to enjoin defendants-appellants, Special Children's Foundation, Inc. and Special Children's Village, Inc., from operating a group home for the mentally retarded at a residence purchased by Special Children's Foundation located at 8825 Graham Drive in Baton Rouge. In their petition for injunction, appellees alleged that the use of the residence for a community home was in violation of the building restrictions placed on the property in 1962. Appellants answered appellees' petition and reconvened for an injunction in their favor and for a declaratory judgment. The trial court granted judgment in favor of appellees enjoining appellants from operating the group home at the location in question.
The building restriction relied upon by appellees reads as follows:
1. All of the lots contained in this subdivision are hereby designated as residential lots, and no building shall be erected, altered, placed or permitted to remain on any lots other than one (1) detached single family dwelling not to exceed two and one-half stories in height and a private garage or carport for not less than two (2) nor more than three (3) cars.
This state's Mental Retardation Law, Chapter 4 of Title 28 (LSA R.S. 28:380-444), was amended and reenacted by Acts 1982, No. 538, 1, effective August 1, 1983. As amended, LSA 28:381(5) provides in pertinent part: "Community homes that provide for six or fewer mentally retarded individuals, with no more than two live-in staff, shall be considered single family units having common interests, goals, and problems."
Appellants maintain that the building restriction relied upon by appellees merely refers to the type of structure which may be erected, rather than to the type of use to which the structure may be employed. Additionally, appellants maintain that even if the restriction is construed to regulate use of the structure, the amendment and reenactment of Chapter 4 of Title 28 is a valid exercise of the state's police power, and thus, supercedes the building restriction. Appellees maintain that to apply the definition of community home found in LSA R.S. 28:381(5) to the building restriction placed on the property in 1962 amounts to an impairment of contracts as proscribed by Article 1, Section 23 of the 1974 Louisiana Constitution.
In interpreting this building restriction, we are required to look to the true intent of the parties. LSA C.C. art. 1945. We agree with appellees that the intent of the parties was that the restriction applied not only to the physical structure, but also, to the use to which the structure could be employed. It seems most unlikely that the term "single family dwelling" would have been incorporated if other uses were to be permitted. To construe this restriction otherwise would lead to absurd consequences. This, however, does not end the inquiry in this appeal.
Having determined that the restriction applies to the use to which the property may be employed, we now must decide if application of the definition of community home found in LSA R.S. 28:381(5) to the restriction violates appellees' right not to have the obligation of their contract impaired. *47 This issue involves several competing concerns.
Article 1, Section 23 of the 1974 Louisiana Constitution provides: "No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted." However, it has long been held that obligations of contracts and vested rights must yield to and can not inhibit the proper exercise of the police power of the state, as long as that police power is exercised for a public end and is reasonably adapted to the accomplishment of that end. Louisiana Gas Serv. Co. v. Louisiana Public Ser. Com'n, 245 La. 1029, 162 So.2d 555 (1964), quoting Treigle v. Acme Homestead Ass'n, 297 U.S. 189, 56 S.Ct. 408, 80 L.Ed. 575. In City of Shreveport v. Curry, 357 So.2d 1078 (La.1978), the Louisiana Supreme Court had occasion to consider the police power of the state, and at page 1081 noted,
Police power is the power of a governmental body to regulate reasonably the actions of its individual citizens in order to protect or promote the public health, safety, morals, peace or general welfare. Mugler v. Kansas, 123 U.S. 623, 8 S.Ct. 273, 31 L.Ed. 205 (1887); City of Lafayette v. Justus, 245 La. 867, 161 So.2d 747 (1964); LaFave and Scott, Criminal Law § 17, p. 117 (Hornbook series, 1972).
The power of the federal government or of a state to pass laws regulating persons and property within its boundaries is an inherent power which stems from the theory that when persons choose to live in groups they must give up some individual freedom for the good of the group. However, the government does not have unlimited authority to regulate the lives of its citizens, but may pass only those laws which are reasonably related to protection or promotion of a public good such as health, safety, or welfare. A law which exceeds the bounds of reasonableness violates due process of law. Mugler v. Kansas, supra; Nomey v. State, 315 So.2d 709 (La. 1975); Louisiana State Bd. of Optom. Exam. v. Pearle Optical, 248 La. 1062, 184 So.2d 10 (1966); City of Lafayette v. Justus, supra; LaFave and Scott, supra, at §§ 18, 20.
We must, therefore, first determine if the legislature acted within its police power in stating that community homes housing six or fewer mentally retarded individuals with no more than two live-in staff shall be considered single family units. A review of the various provisions of Title 28, entitled Mental Health, leads us to the conclusion that the legislature was acting within its police power.
As noted above, Louisiana's Mental Retardation Law is contained in Title 28, Chapter 4, Sections 380-444. Section 380(B) provides in part, "It is the purpose of this Chapter to provide for a Mental Retardation Services System, and in doing so protecting the basic human rights of individuals who are mentally retarded and living in the state of Louisiana." Additionally, Section 380(C) provides in part, "It is the intent of this Chapter to provide a Mental Retardation Services System through a regional network of public and private residential options or mental retardation services or both under the administration and supervision of the office and the department." Rights of the mentally retarded are denoted in Section 390, wherein the right to live in the least restrictive residential living option, including community homes, is specifically provided.
Appellees maintain that the failure of the legislature to affirmatively state that Chapter 4 of Title 28 is an exercise of the state's police power inevitability leads to the conclusion that it is not. In support of this position, appellees cite LSA R.S. 28:476 which states,
The legislature hereby declares that it is the policy of this state as declared and established in this Title and in the mental retardation law and in the mental health law that mentally and physically handicapped persons are entitled to live in the least restrictive environment in their own community and in normal residential surroundings and should not be excluded therefrom because of their disabilities. The legislature further declares that the *48 provisions of this Chapter are intended to secure to all of the citizens of this state the right to individual dignity as provided in Article 1, Section 3 of the Constitution of Louisiana and to protect the rights and promote the happiness and general welfare of the people of this state. To that end, the legislature hereby declares that the provisions of this Chapter are an exercise of the police power reserved to the state by Article 1, Section 4 and Article VI, Section 9(B) of the Constitution of Louisiana.
The above quoted provision is found in Chapter 5 of Title 28 entitled Group Home for Handicapped Persons Act. While the act clearly deals with zoning matters which are not under consideration in this appeal, the first sentence of the provision clearly sets forth the policy of this state in regard to all matters encompassed within Title 28.
Having determined that the legislature has acted within the police power afforded it in defining community homes as they have, we must now determine if the definition is reasonably related to protection and promotion of a public good such as health, safety or welfare. Article 1, Section 3 of the Louisiana Constitution of 1974, entitled Right to Individual Dignity, provides,
Section 3. No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.
There is no question, in the opinion of this court, that defining community homes in the manner chosen by the legislature is reasonably related to the protection and promotion of a public good. We are of the opinion that the public at large, much less those mentally retarded citizens housed in such facilities, will be greatly benefitted by the integration of handicapped individuals into the mainstream of society.
Appellees finally note that appellants have not assigned as error the trial court's determination that operation of the community home would be a violation of the building restrictions in that it is a business operation. Our reading of the trial judge's reasons for judgment indicates that while the judge expressed an opinion on this issue, his judgment was grounded on the single family dwelling issue. However, in the interest of justice, we will consider this issue. Uniform Rules, Courts of Appeal, Rule No. 1-3.
The fact that the residence is a part of non-profit corporation's business does not violate the building restrictions affecting the property. The fact remains that the residence is being used as a residence as contrasted from a situation where a business was actually being run from the structure. We find nothing in the restrictions which would preclude any one of the other owners in the subdivision from leasing their residences to single family units.
Therefore for the foregoing reasons, the judgment of the trial court enjoining appellees, Special Children's Foundation and Special Children's Village, from operating a community home for the mentally retarded as defined in LSA R.S. 28:381(5) is hereby reversed. Appellees are to bear the costs of this appeal.
REVERSED.
EDWARDS, J., concurs in the result. The decision of this court need not go beyond the restrictive covenantsthey do not prohibit this activity.